## B. W. MOORE, v. JOHN INGRAM, Adm'r.

*Executors and Administrators—Special Proceeding—Jurisdiction—Judgment—Homestead—Vendor's Lien does not obtain here.*

1. Administrator filed petition against heirs of intestate to sell land for assets; issues were joined and the proceeding transferred to court in term, and upon the trial the issues were found in favor of the administrator; the judge gave the license to sell and also directed how the proceeds of sale should be applied; *Held,*

   (1) The court intimate that the judge had no power to order the sale.

   (2) The jurisdiction to direct the application of the proceeds is exclusively in the clerk.

   (3). The plaintiff in this [case was not a party to the special proceeding for the order to sell, and is therefore not concluded or affected by the judgment therein rendered.

2. A judgment consisting of several distinct and independent parts may be good as to one part and erroneous as to the others.

3. A judgment against an administrator founded upon a debt of the intestate contracted for the purchase of land, has no precedence over debts of the same class to be satisfied out of assets raised by the administrator under an order to sell the land.

4. There is no homestead right involved here; nor does the vendor's lien obtain in this state.

(*Satterwhite* v. *Carson*, 3 Ired., 549; *Hoskins* v. *Wall*, 77 N. C., 249; *Womble* v. *Battle*, 3 Ired. Eq., 182; *Smith* v. *High*, 85 N. C., 93, cited and approved.)

CIVIL ACTION, tried at Spring Term, 1884, of MACON Superior Court, before *Graves, J.*

This was a creditor's bill filed by the plaintiff, in behalf of himself and the other creditors of the estate of T. A. Lowery, deceased, against the defendant as his administra-

tor, under the act of 1871–'72, ch. 213, § 1. (Bat. Rev., ch. 45, § 73.)

The case presented by the record transmitted to this court is as follows:

The clerk of the superior court, before whom the special proceedings were had, found as facts, that T. A. Lowery died intestate in 1869, and the defendant qualified as his administrator in 1875.

In 1875, W. M. Patton obtained a judgment in the superior court against said administrator for $492.05, the balance due on purchase money for land sold by Patton in the year 1859.

The plaintiff obtained judgment before a justice of the peace on the 14th of September, 1878, for $104, and costs against said administrator.

The administrator on the ...... day ........ , 18..., filed his petition for license to sell his intestate's land to pay the judgment in favor of Patton, when the heirs of the intestate resisted the petition, insisting that the judgment was unjust and that the purchase money for the land had been paid. The issues thus raised were transmitted to the superior court in term for trial. They were submitted to a jury under the direction of the court and found in favor of the administrator. Thereupon, at spring term, 1880, before *Schenck, J.*, the petition was heard and an order made directing the administrator to sell the land and apply the proceeds to the Patton judgment, and pay the residue, if any, to any debts outstanding against his intestate's estate.

The land was accordingly sold, and it brought $305, which the administrator applied to the Patton judgment; and from the report of the defendant in his final settlement, the proceeds of this sale were the only assets that ever came to his hands.

Upon this state of facts the clerk of the superior court adjudged that the administrator had disbursed the assets

properly by paying the same on the Patton judgment, and the plaintiff excepts to this, for that, both Patton's and his own debt belonged to the seventh class as provided in Bat. Rev., ch. 45, §§ 40, 41, and must be paid *pro rata;* and further, the clerk finds as a fact that the $305, assets, were received at spring term, 1880, and that plaintiff obtained his said judgment of $104 on the 14th of September, 1878, and that defendant paid all the assets on the debt of Patton: Wherefore the plaintiff says that the same is in violation of law, and asks that he may be allowed his *pro rata* share thereof. The exceptions of the plaintiff were overruled, the report confirmed, and the plaintiff appealed to the judge, who, at spring term, 1884, affirmed the judgment of the clerk; and it was further adjudged that the plaintiff and his surety pay the costs of this action. From which judgment the plaintiff appealed to this court.

*Mr. Geo. A. Jones,* for plaintiff.
*Messrs. Reade, Busbee & Busbee,* for defendant.

ASHE, J. We are of opinion there is error in the judgment pronounced by His Honor in affirming the judgment of the clerk, for there is also error in the judgment of the clerk in overruling the exception taken by the plaintiff. The plaintiff's exception should have been sustained.

The ruling of the clerk seems to have been predicated upon the idea that the judgment pronounced by the judge at spring term, 1880, giving to the defendant license to sell the real property of his intestate, and adjudging that out of the proceeds of the sale he should in the first place satisfy the judgment in favor of Patton, was a judgment warranted by law and conclusive upon the plaintiff.

Conceding that the judge had the right to render a judgment in the case granting a license to sell the land, about which there was no point made, we are of opinion he had

no right or authority, in that judgment, to direct how the proceeds of the sale should be applied. That was a matter which belonged exclusively to the jurisdiction of the clerk. C. C. P., §§ 433, 434. The judge in term has no jurisdiction over the settlement of intestates' estates, except in cases where the action in nature of a creditors' bill is brought by a creditor under the act of 1870–'71, (THE CODE, § 1448,) and in some cases where the court of equity takes jurisdiction.

If the judgment rendered by the judge had any conclusive effect at all, it was only so far as it gave the license to sell the land; and that was for the reason the administrator in that particular represented the creditors. But the adjudication upon the question of the application of the assets was extra-judicial, and therefore not conclusive. A judgment, consisting of several distinct and independent parts, may be good as to one part and erroneous as to the others. *Satterwhite* v. *Carson*, 3 Ired., 549. But if the judgment in question has any validity at all as to the latter part, it is a judgment *inter partes*, and the maxim *res inter alios acta alteri noceri non debet* governs the case. " The application of the maxim to the law of judgments requires that no person shall be affected by any judicial investigation to which he was not a party, unless his relation to some of the parties was such as to make him responsible for the final result of the litigation. It is a general rule that an adjudication takes effect only between the parties to the judgment, and that gives no rights to or against third parties." Freeman on Judgments, § 154.

And in Broom's Legal Maxims, 705, we find it laid down as a general principle, that a transaction between two parties in judicial proceedings ought not to be binding upon a third party, for it would be unjust to bind any person who could not be admitted to make a defence, or to examine witnesses, or to appeal from a judgment which he might think erroneous.

In Starkie on Evidence the same principle is announced in the following passage: "It is an elementary rule and principle of justice that no man shall be bound by the act or admission of another, to which he was a stranger, and consequently no one ought to be bound as to the matter of private right by a verdict or judgment to which he was not a party; when he could make no defence; from which he could not appeal; and which may have resulted from the negligence of another; or even may have been obtained by fraud and collusion."

But the defendant's counsel contended in the argument before us that the proceeds of the sale were first to be applied to the Patton judgment, because the judgment was founded upon a debt contracted by the defendant's intestate for the purchase of the land, and, by article ten section two of the constitution, "no property shall be exempt from sale for the payment of obligations contracted for the purchase of the premises," and that the land being thus made liable for the purchase money, its liability continued in the hands of the heirs after the death of the purchaser, and attached to the proceeds of the sale, when sold by the administrator to make assets.

The answer to that is—The section of the constitution referred to provides a homestead for each resident of the state by exempting from sale under execution land owned and occupied by him, not exceeding one thousand dollars in value, but excepts from the exemption the sale of the land for the payment of the purchase money. The exception applies exclusively to the case where a homestead is claimed in the land sought to be subjected to the payment of the purchase money, and has no application to a case where the homestead right is not involved. In a case where there is no right of homestead against the debt, as where (as in this case) it is an old debt contracted prior to the constitution of 1868, the constitution does not interfere with the

relations of creditor and debtor, but leaves them as they existed before its adoption.

The position taken by the counsel can only be supported upon the idea that a judgment founded upon the debt contracted for land creates a lien on the land for the purchase money. But in this state it has been well settled that there is no such thing as a vendor's lien, *Hoskins* v. *Wall*, 77 N. C., 249; *Womble* v. *Battle*, 3 Ired. Eq., 182; *Smith* v. *High*, 85, N. C., 93. In the last cited case it was expressly held that the law in regard to the vendor's lien was not changed by the constitution of 1868, and that the exception in the second section of article ten gave no lien to the holder of a note for the purchase money of land, but provided simply that if such holder shall obtain a judgment on the instrument and issue his execution against the vendee, his right to a homestead in the land purchased by him shall not be an impediment to the sale of the land. But, as we have shown, that question cannot arise where the debtor, as in the case of the Patton judgment, was not entitled to a homestead. Nor does it arise in the case of Moore's judgment, for there is no point made in the record about a homestead. And we must take it that there was no one entitled to a homestead in the land sold by the administrator, or a claim for it would have been set up, or at least made a point in the case.

We are of opinion the exceptions of the plaintiff should have been sustained, and the proceeds applied to the two judgments *pro rata*, if there are no other debts in the same class; but if there are, then to all of them *pro rata*.

There is error. Let this be certified to the superior court of Macon county that the case may be proceeded with in conformity to this opinion and the law.

Error.                                         Reversed.