\*THOMAS M. YOUNG v. J. B. CONNELLY et al.

*Judgment—Docketing—Duty of Clerk—Liability of Sureties on Official Bond.*

1. Where, by consent of parties, a Judge of the Superior Court signed a judgment at Chambers after the adjournment of Court, leaving blanks for the insertion of the amount of costs and referee's fee and sent the same to the Clerk of the Superior Court, directing him to fill up the blanks and file the judgment, after consulting with counsel as to the amount of the referee's fee, and counsel agreed upon the fee and notified the Clerk and requested him to docket the judgment at once, which he failed to do prior to the probate and registration of a deed of conveyance of all of his property by one of the defendants in said judgment: *Held,* that the failure of the Clerk, under the circumstances, to docket the judgment was such a breach of official duty as to render the sureties on his official bond liable for any loss resulting to plaintiff therefrom.

2. The failure of a Judge to adjudicate as to costs does not effect or render invalid as a final judgment an adjudication upon another matter embraced therein.

3. The compensation of a referee is a part of the costs of an action in which a reference has been ordered and was fixed by statute (C. C. P. sec. 533) unless otherwise agreed upon by the parties; and it was the duty of the Clerk to tax such costs subject, of course, to the revision of the Judge.

---

*AVERY, J., did not sit on the hearing of this appeal.

CIVIL ACTION, tried at August Term, 1892, of IREDELL Superior Court, before *Boykin, J.*

Upon an intimation by his Honor that, upon the evidence introduced, they could not recover the plaintiffs submitted to a nonsuit and appealed.

The facts necessary to an understanding of the decision are fully stated in the opinion of Associate Justice MACRAE.

*Messrs. J. B. Armfield* and *T. B. Bailey,* for plaintiff (appellant).

*Messrs. Robbins & Long* and *Bingham & Caldwell,* for defendants.

MACRAE, J. : This was an action upon the official bond of J. B. Connelly, Clerk of Iredell Superior Court, to recover damages for the alleged default in said Clerk in failing to docket a judgment in favor of the plaintiff and against Margaret J. Young, guardian, J. H. Dalton and others, it being alleged in substance that the said Dalton was solvent at the time of the rendition of said judgment, but that before the same was docketed, so as to constitute a lien upon his lands, the said Dalton had conveyed and assigned all of his property by deed of trust; that the other defendants are insolvent, and that by reason of the failure of said Clerk to docket said judgment, as he was bound by law to do, the plaintiff had lost the fruits of his judgment against

the said Dalton.    His Honor intimated, after hearing the evidence, that the alleged judgment had never become a judgment of this Court, and that upon the whole evidence the plaintiff could not recover.    Whereupon the plaintiff submitted to a nonsuit and appealed.

On a case coming before us in this form it is necessary for us to state the whole evidence in the most favorable light in which it can be viewed for the plaintiff.    *Gibbs* v. *Lyon*, 95 N. C., 146.

It is admitted by the pleadings "that at November Term, 1887, of the Superior Court of Iredell County, the plaintiff, Thomas M. Young, recovered a judgment against Margaret J. Young, who was the guardian of the said Thomas M. Young, and John H. Dalton and P. B. Kennedy, guardian of A. L. Young, lunatic, for the sum of $2,793.01, with interest on $2,028.87, principal, from the 18th of September, 1881, until paid, with costs of the case, amounting to $———.    That said judgment was rendered by Clark, then Judge of the Superior Court, at Chambers in Lexington, on the 10th day of December, 1887, he having heard said action at said time and place by the consent of the parties, it being heard upon exceptions filed to the report and account stated by the referee theretofore appointed by the Court."

The contention of defendants was that this judgment was never completed; that there were certain blanks to be filled before the paper-writing became the judgment of the Court; that said blanks had never been filled, and that it had not become the duty of the Clerk to docket the same as a judgment of the Court.

We may gather from the testimony, taken most favorably to the plaintiff: the conclusion of the judgment was as follows:  "The plaintiff, Thomas M. Young, will recover of defendants $2,793.01, of which $2,028.87 is principal

money and draws interest from the 18th of September, 1881, until paid, together with the costs of this action, to be taxed by the Clerk. The referee, A. L. Coble, is allowed the sum of $——, to be paid by ———."

No question was made, nor could it have been made, upon the power of the Judge, by consent of counsel on each side, to take the papers and render his judgment in another county, to be entered upon the record of the term and of the county at which the case was heard. *Shackelford* v. *Miller*, 91 N. C., 181; *McDowell* v. *McDowell*, 92 N. C., 227. His Honor returned the papers with his judgment to the Clerk of Iredell and directed the Clerk by a letter, which has been lost, "to see counsel; that he thought referee's fees ought to be divided between the parties; that if they so agreed, insert the same and docket; if they did not agree to divide the fee, then to charge the fee against defendant, and docket." " He did not instruct the Clerk to fill in the blanks and then docket." This is according to the testimony of Mr. Turner, one of plaintiff's counsel.

According to the testimony of defendant Connelly the letter stated "that I would see in the judgment roll the amount of allowance to referee Coble, —— dollars; that the amount of said allowance was to be agreed upon by attorneys for plaintiff and defendant. In said letter he instructed me when said allowance was agreed upon and inserted then I should record the judgment roll upon the minutes of the court." The recollection of Judge Clark, according to his testimony, was that upon the hearing counsel stated they would agree upon the compensation of referee, and he left the amount blank in the judgment and wrote Connelly to get consent to fill it up and then file the judgment. While there is no very great difference between the witnesses upon this point, probably the testimony of Judge Clark states it most favorably for plaintiff.

It appears further by the testimony that counsel on both sides went to the Clerk's office after the judgment was received, having agreed upon the amount to fill in the blank, $75; that Mr. Furches, counsel for defendants, suggested that the blank be filled in then; that Mr. Turner, counsel for plaintiff, postponed it until he could consult with his associate counsel, and after such consultation, on a subsequent day, went to the Clerk's office and directed him to fill the blanks and docket it, and he promised to do it.

Mr. Turner further testifies to his having gone to the Clerk two or three times before the 1st of February and requested him to docket the judgment, and the Clerk having promised to docket it.

So it seems in this view of the testimony that it was the duty of the Clerk to have filled the blanks and docketed the judgment. The referee's fee was a part of the costs. It was necessary for the Clerk to tax the costs and insert the amount in the entry of judgment in addition to the sum adjudged by his Honor. *The Code,* §532. The Clerk had been informed of the amount of the fee. There was nothing further to be done than the ministerial act of the Clerk to tax costs and docket the judgment. It was the duty of the Clerk, when the judgment was received by him, to have taxed the costs. Under the direction of the Judge he should have notified counsel, and if they did not agree upon the allowance to the referee he should have fixed it according to the law as it then was (Bat. Rev., ch. 17, sec. 285), and taxed it in the bill of costs, and docketed the judgment. *The Code,* §433.

According to the approved forms of judgments in North Carolina, as laid down in Eaton's Forms, the standard authority, often approved, the judgment was rendered for the debt or damage, "and for costs." In practice frequently it was added, "to be taxed by the Clerk," but whether the

last words were used or not, it was the duty of the Clerk to tax them, subject, of course, to the revision of the Judge, as witness the frequent motions to retax the costs.

The judgment consisted of two several and independent parts. It might have been good as to one and erroneous as to the other. *Moore* v. *Ingram*, 91 N. C., 376. Even a failure to adjudicate as to costs would not have affected the judgment as a final one. *Peterson* v. *Vann*, 83 N. C., 118.

At the time of the rendition of this judgment the law fixed the compensation of the referee unless otherwise agreed upon by the parties. C. C. P., sec. 533. There was no ground for delay in docketing in the face of the repeated requests of plaintiff's counsel and the agreement of counsel as to the amount of the allowance.

The defence set up for failure to docket, that the fees were not paid or tendered, was expressly waived in this Court.

The official bonds of the Clerk of 1886 and 1887 were conditioned, among other things, for the discharge of all the duties required of him as Clerk by law.

If his Honor's opinion, that upon the evidence plaintiff was not entitled to recover, may be construed to mean that the failure on his part to docket the judgment was not such a breach of duty as to render his sureties liable, we cannot concur with him; it was a duty as we have seen specially imposed by statute.

There are other questions raised by the pleadings which will necessarily be passed upon in a subsequent trial.

His Honor having erred in his intimation, upon which the judgment of nonsuit was entered, there must be a

New Trial.