PETER T. LEARY AND WIFE, DORIS W. LEARY, AND MARYLAND CASUALTY
COMPANY v. NANTAHALA POWER AND LIGHT COMPANY

No. 8430SC1178

(Filed 6 August 1985)

1. **Bills of Discovery § 6; Rules of Civil Procedure § 37— failure to comply with discovery order—evidence admitted—no error**

   The trial court did not err in an action for damages from a fire allegedly caused by a falling tree limb striking an electric service drop conductor by admitting into evidence photographs which had not been produced for inspection before trial in violation of a discovery order. The photographs were admitted only for the purpose of illustrating a plaintiff's testimony, and there was no indication that the photographs were used or even viewed by plaintiff's expert witness on value.

2. **Bills of Discovery § 6; Rules of Civil Procedure § 37— failure to comply with discovery order—evidence admitted—no abuse of discretion**

   The trial court did not abuse its discretion by admitting into evidence photographs and sections of an electrical service mast not produced as required by a discovery order in an action for damages allegedly caused by a tree limb falling on power lines where defendant had been made aware through discovery that a metallurgical examination of the service mast had been conducted and that a metallurgist had been retained as an expert witness by plaintiffs, defendant had been furnished with a copy of a report compiled by an engineering firm employed by the plaintiffs which contained a number of photographs of the service mast and referred to the metallographical examination and findings, the trial court offered defendant a recess so that it might employ its own metallurgist, and defendant declined the recess but submitted the materials to a metallurgist who testified for defendant at trial. G.S. 1A-1, Rule 36(b)(2).

3. **Trial § 18.1— evidence excluded ex mero motu—no error**

   The trial court did not err in an action for damages from a tree limb falling on a power line when it sustained its own objection to defendant's attempt to ask a metallurgist about the temperatures he would expect to find in a house fire. The evidence involved lay outside the field of the witness's expertise and his preparation for trial.

4. **Evidence § 47.1— expert testimony based on hearsay—basis of opinion explained—no error**

   In an action arising from the burning of a cabin after a tree limb fell on a power line, the trial court did not err by permitting plaintiffs' expert on the cause of fires to eliminate accidental fire, arson or household electrical current inside the cabin as causes of the fire. Although the witness eliminated accidental fire based on hearsay information that no one had been in the cabin, he qualified his opinion by stating that it was based on information provided to him and he admitted that he had no way of knowing whether anyone had broken into the cabin. No exception appeared in the record to testimony re-

garding household electrical current or arson. G.S. 8-58.12; Rule 10(2), N. C. Appellate Procedure.

**5. Evidence § 56— expert testimony as to value of antiques destroyed in fire—no error**

The trial court did not err in an action arising from the burning of a cabin after a tree limb fell across power lines by *allowing plaintiffs' expert to give his opinion of the value of antiques in the cabin* even though he had never seen the plaintiffs' antiques. The witness testified to extensive experience as a collector and dealer in antiques; he had some knowledge of the kinds of antiques in plaintiffs' inventory, having sold items to plaintiffs and having been present at antique shows and sales where they displayed various items; he had been furnished a list prepared by plaintiffs more than a month prior to trial and had reviewed descriptions and values contained therein; and those descriptions and values had already been admitted into evidence through the testimony of a plaintiff.

**6. Appeal and Error § 49; Evidence § 55— expert testimony excluded—witness not qualified—substantially similar testimony admitted**

There was no prejudicial error in the exclusion of testimony from defendants' expert on design of electrical service systems to residential customers concerning the effects upon various components of electrical systems of being struck by lightning or falling tree limbs where the record did not indicate that the witness possessed any special training, experience, or knowledge which would render him qualified to express an opinion; moreover, substantially the *same evidence was admitted through the testimony of defendants' electrical engineering expert.*

**7. Appeal and Error § 50.2— lapsus linguae—no prejudicial error**

In an action arising from a tree limb falling across a power line, there was no prejudice from the trial judge's *lapsus linguae* in instructing the jury that they could accept a witness's testimony only for the purpose of illustrating his testimony where the judge immediately corrected the instruction by telling the jury that they were not to consider an exhibit as an experiment, but only as an illustration.

**8. Appeal and Error § 49— exclusion of expert testimony—substantially similar testimony admitted—no error**

In an action arising from a tree limb falling across a power line, there was no prejudicial error in the exclusion of testimony from defendant's expert concerning the weakest part of an electrical distribution system where the same witness presented other testimony with substantially the same meaning.

**9. Trial § 11— Supreme Court opinion read to jury—no error**

The trial court did not err by permitting plaintiffs' counsel to read from a Supreme Court decision during jury argument where the case was not so dissimilar as to be irrelevant *per se*, the arguments were not included in the record, and the trial judge gave a cautionary instruction which corrected any impropriety which may have occurred.

Leary v. Nantahala Power and Light Co.

**10. Judgments § 55— prejudgment interest on total damage award—$200,000 deductible—error**

In an action in which a cabin burned after a tree limb fell across a power line, the trial court erred by awarding prejudgment interest on a portion of a damage award not covered by liability insurance due to a $200,000 deductible. G.S. 24-5.

**11. Rules of Civil Procedure § 59— damages improperly reduced ex mero motu over plaintiffs' objection**

In an action arising from the burning of a cabin after a tree limb fell across power lines, the trial court erred by reducing damages for the cabin from $45,000 to $35,000 because the insurance company had sought only $35,000, its subrogation interest, but there was evidence supporting the jury's verdict and plaintiffs objected to a reduction in the verdict. G.S. 1A-1, Rule 59.

**12. Costs § 3— costs taxed by clerk and reduced by court—no error**

In an action arising from a tree limb falling across power lines, the trial court, in the exercise of its supervisory powers, had jurisdiction to review the clerk's order approving and taxing costs. G.S. 1-277 applies only to appeals from the clerk in proceedings in which the clerk had original jurisdiction. G.S. 6-7.

APPEAL by defendant and cross appeal by plaintiffs from judgment and order of *Burroughs, Judge.* Judgment entered 6 March 1984 and order entered 18 July 1984 in Superior Court, SWAIN County. Heard in the Court of Appeals 4 June 1985.

Plaintiffs Peter Leary and wife Doris Leary owned a log cabin located on four acres of land at the intersection of U. S. Highway 129 and N. C. Highway 29 in Swain County. They planned to turn the cabin into an antique shop and stored a substantial inventory of antique furniture, pottery, paintings and other furnishings in the cabin, as well as items of their personal belongings. The cabin was insured by plaintiff Maryland Casualty Company in the amount of $35,000.00; the contents of the cabin were not insured. On 12 February 1981 the cabin and its contents were completely destroyed by fire. Maryland Casualty Company paid the Learys the full amount of the coverage provided by the insurance policy. Plaintiffs Leary and Maryland Casualty Company then filed this action against defendant Power Company alleging that the fire had been caused when a tree limb fell and struck defendant's electric service drop conductor which ran from defendant's utility pole to a galvanized steel service mast on the cabin. Plaintiffs alleged that defendant had been negligent in failing to remove tree limbs overhanging the service drop despite

knowledge that the limbs were rotten and might fall, and that defendant had improperly installed the service drop to the cabin. As a result, plaintiffs alleged, when the tree limb fell the "hot" wires disconnected from the masthead and came into contact with the service mast, causing an electrical arcing which spattered molten metal particles onto the cabin's wood shingled roof and started the fire. Plaintiffs Leary sought $210,000.00 in damages and Maryland Casualty Company sought $35,000.00, the extent of its payment for the loss of the cabin.

Defendant Power Company answered, denying the material allegations of the complaint and asserting that plaintiffs Leary were contributorily negligent in failing to remove the dead tree limbs. The jury answered the issues of negligence and contributory negligence in plaintiffs' favor and awarded as damages $45,000.00 for the loss of the cabin and $175,000.00 for the loss of personal property. The trial court, *ex mero motu*, reduced the verdict for damages to the cabin to the sum of $35,000.00, over objection of the plaintiffs. The court then entered judgment for plaintiffs in the amount of $210,000.00, with interest from the date plaintiffs filed their complaint. Defendant thereafter filed a motion to amend the judgment, alleging that because its liability insurance coverage was subject to a $200,000.00 deductible provision, only $10,000.00 of the judgment was covered by liability insurance and subject to prejudgment interest. The motion was denied. The clerk taxed costs against defendant in the amount of $13,843.71 including expert witness fees in excess of $11,500.00. Upon objection by defendant and review by the trial court, the court sustained certain of defendant's objections and approved costs totalling $4,756.35. Defendant appeals and plaintiffs Leary cross-appeal.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Philip J. Smith and Allan R. Tarleton, for plaintiffs appellees-appellants Leary.*

*Lentz, Ball & Kelley, P.A., by Ervin L. Ball, Jr., for plaintiff appellee Maryland Casualty Company.*

*Morris, Golding and Phillips, by James N. Golding and William C. Morris, III, for defendant appellant-appellee.*

MARTIN, Judge.

By its appeal, defendant Power Company assigns error to various of the court's rulings at trial, and to its award of prejudgment interest. By their cross appeal, plaintiffs assign error to the court's entry of judgment for an amount less than the jury verdict, and to post-trial rulings with regard to costs. We find no prejudicial error in the trial or in the court's ruling as to costs, but conclude that the court erred in awarding prejudgment interest on that portion of the judgment not covered by liability insurance, and in reducing, *ex mero motu*, the jury's verdict. Accordingly, we remand for entry of judgment consistent with this opinion.

## TRIAL

[1] Defendant's first and second assignments of error relate to the admission into evidence of certain photographs and items of physical evidence. Defendant contends that these exhibits should not have been admitted because plaintiffs had not produced them for inspection before trial in violation of a discovery order. The discovery order, entered approximately eighteen months before trial, compelled plaintiffs to produce, among other things, "all photographs taken of the site of the fire before or after the fire" as well as "photographs which will form a basis for the factual contentions and/or opinions of Plaintiffs' expert witness(es)." The order also required plaintiffs to produce all items of physical evidence taken from the site of the fire which plaintiffs intended to introduce into evidence or which would form the basis for the opinion of an expert witness.

In response to the discovery order, plaintiffs apparently produced a number of photographs, but did not include among them certain photographs, taken before the fire, of various antiques which plaintiffs claimed had been destroyed in the fire. At trial, during the direct examination of plaintiff Peter Leary, these photographs were offered into evidence. Upon defendant's objection, the trial court ruled that the photographs would be admitted for purposes of illustrating Peter Leary's testimony, but could not be used by plaintiffs' expert witness since they had not been produced as required by the discovery order. The photographs were obviously competent to illustrate Leary's testimony as to the antiques which had been destroyed. The record before us contains

no indication that the photographs were used, or even viewed, by plaintiffs' expert witness as to value. We discern no abuse of the trial court's discretion in permitting the admission of the photographs into evidence for illustrative purposes.

[2] Defendant also objected to the introduction into evidence of sections of the service mast and photographs of certain portions of it, all of which were used by Dr. James Magor, a metallurgist called by plaintiffs, to illustrate his testimony as to his findings upon a metallurgical examination of the service mast. Defendant contends that neither the photographs nor the sections of the mast had been produced as required by the discovery order and that the appropriate sanction for noncompliance would have been the exclusion of this evidence. Defendant further asserts that had it known of these exhibits and that a metallurgical examination had been conducted, it could have obtained its own metallurgist to examine the service mast.

While exclusion of the evidence would have been a permissible sanction, authorized by G.S. 1A-1, Rule 37(b)(2), for noncompliance with the discovery order, it was not mandatory. In addition to those sanctions specified by Rule 37(b)(2), the rule authorizes the court, upon failure to comply with a discovery order, to "make such orders with regard to the failure as are just." Necessarily, then, the imposition of sanctions is within the sound discretion of the trial judge. *Willoughby v. Wilkins*, 65 N.C. App. 626, 310 S.E. 2d 90 (1983), *disc. rev. denied*, 310 N.C. 631, 315 S.E. 2d 697-98 (1984).

The record before us indicates that defendant had been made aware, through discovery, that a metallurgical examination of the service mast had been conducted and that a metallurgist had been retained as an expert witness by plaintiffs. Apparently, defendants elected not to depose the metallurgist. In addition, defendant had been furnished a copy of a report compiled by Research Engineers, Inc., an engineering firm employed by plaintiffs, which contained a number of photographs of the service mast and referred to the metallographical examination and findings. Upon learning of defendant's objection to the exhibits, the trial court conducted a hearing and offered to recess the trial in order that defendant might employ its own metallurgist. Defendant declined the offer for a recess and elected to continue with the trial. Defendant did,

however, submit the materials to a metallurgist for examination, and defendant's metallurgist testified at the trial. Thus, while we do not approve the non-production of the exhibits, we cannot say that their admission into evidence prejudiced the defendant, nor can we say that the trial court's offer to grant defendant a recess rather than impose the sanction of exclusion of the evidence was unjust or amounted to an abuse of discretion. These assignments of error are overruled.

[3] During defendant's cross-examination of Dr. Magor, who had been accepted by the court as an expert in the field of metallurgy, defendant attempted to ask the witness what temperatures he would expect to find in a house fire. The court, *ex mero motu*, sustained its own objection, stating that Dr. Magor was not qualified to answer the question. Defendant contends the court's action in sustaining its own objection prevented it from testing Dr. Magor's knowledge of the subject matter of his testimony and amounted to an expression of opinion prejudicial to defendant. We find no merit in these contentions. As long as the court maintains impartiality, it may, of its own motion, exclude incompetent or inadmissible evidence. *Greer v. Whittington*, 251 N.C. 630, 111 S.E. 2d 912 (1960). The evidence involved lay outside the field of Dr. Magor's expertise. metallurgy, and his preparation for trial, which consisted solely of laboratory examination of the service mast.

[4] Another of plaintiffs' witnesses, Fred L. Rapp, was accepted by the court as an expert in the fields of electrical engineering and the cause and origin of fires. During his testimony on direct examination, he negated incendiarism, accidental fire, spontaneous ignition and electrical fire inside the house as causes of the fire that destroyed the Leary's cabin. His elimination of accidental fire was based on information which had been furnished him that no one had been in the cabin. Defendant objected and now assigns the admission of this testimony as error, contending that there was no evidence from any of plaintiffs' witnesses that they had been in or near the cabin during the week and therefore the property had been unprotected and could have been entered by trespassers. We do not believe the admission of this testimony prejudiced defendant. Mr. Rapp qualified his opinion by stating that it was based on information provided him, and he admitted on cross-examination that he had no way of knowing whether or

not someone had broken into the cabin before the fire occurred. The hearsay nature of the information relied upon by Mr. Rapp does not render his opinion inadmissible, *State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979), nor is there any requirement that such opinion be elicited through the use of a hypothetical question. N.C.G.S. § 8-58.12. Defendant also attempts, under this assignment of error, to assert similar challenges to the admission of Mr. Rapp's testimony negativing household electrical current inside the cabin or arson as causes of the fire. However, no exception appears in the record as to this testimony and, therefore, defendant's arguments are not properly presented for our review. Rule 10(a), N.C. App. Proc. This assignment of error is overruled.

[5] Defendant also assigns error to the admission of testimony by Gilbert Hollifield, an expert in the field of antiques and collectibles. Defendant contends that Mr. Hollifield, having never seen the plaintiffs' antiques, was not competent to give his opinion as to their value.

During the testimony of plaintiff Peter Leary, plaintiffs introduced into evidence a listing of all of the contents of the cabin, which had been prepared by Mr. and Mrs. Leary after the fire. The list contained a description of each item and its value in Leary's opinion. Leary testified that the fair market value of all of the items destroyed by the fire aggregated approximately $190,000.00. When Mr. Hollifield testified, he was permitted to testify, over objection, that he had reviewed the list prepared by the Learys and in his opinion the aggregate value of the listed items reflected their fair market value as of the date of the fire. He admitted that he had not seen the antiques and that the value of such items would vary significantly depending on their condition.

Generally, a witness qualified by experience, information and observation may give an opinion as to the value of specific property. 1 H. Brandis, *North Carolina Evidence* § 128 (1982). To establish an adequate foundation to place a valuation into evidence, it must be shown that the witness (1) is familiar with the property upon which he places a value and (2) has sufficient knowledge or experience as to enable him to place such a value. *Britt v. Smith*, 6 N.C. App. 117, 169 S.E. 2d 482 (1969). While knowledge or familiarity based on personal observation is certain-

ly the more usual and preferred method of qualifying an expert witness as to value, it is not the only method. *Hartford Acc. & Indem. v. Dikomey Mfg.,* 409 A. 2d 1076 (D.C. 1979). Where property has been lost or destroyed, an expert witness may testify as to its value based on a description of the property furnished by others. *See Haynes v. Glenn,* 197 Va. 746, 91 S.E. 2d 433 (1956), *Dixon v. Millhorn,* 55 Ohio App. 193, 9 N.E. 2d 183 (1936), *Fidelity Storage Co. v. Foster,* 51 F. 2d 439 (D.C. Cir. 1931). Mr. Hollifield testified to extensive experience as a collector and dealer in antiques. He had some knowledge of the kinds of antiques in plaintiffs' inventory, having sold items to them and having been present at antique shows and sales where plaintiffs displayed various items. He had been furnished the list prepared by plaintiffs more than a month prior to trial and had reviewed the descriptions and values contained thereon, which descriptions and values had already been admitted into evidence through the testimony of Peter Leary. The record provided a sufficient foundation for Mr. Hollifield to render his opinion as to value; the fact that in forming his opinion he relied on the Learys' description of the items, rather than his own observation of them, affected only the weight to be given his testimony by the jury and not its admissibility.

Defendant also assigns error to the exclusion of certain evidence which it sought to offer through the testimony of its area manager, J. R. Marr, and its electrical engineering expert, Harold Nash. We have examined defendant's contentions carefully and conclude that no prejudice resulted from the rulings complained of.

[6] Defendant tendered Mr. Marr as an expert witness in the "operation and maintenance of electrical distribution systems." Upon voir dire, the evidence established that Mr. Marr had a college degree in education and had taught school before becoming employed by defendant as a meter reader. Although he began a course of instruction for training as a lineman, he did not complete the course. His duties as area manager for defendant included talking with prospective residential customers, obtaining rights-of-way for provision of service to their homes, determining the location of the power poles, scheduling line crews and specifying the materials to be used in providing electrical service systems to the residences. The record does not disclose that Mr.

Marr had received any training in the field of electrical engineering. The trial court accepted Mr. Marr as an expert in "design of electrical service systems to residential customers." Thereafter, defendant sought to elicit testimony from Mr. Marr concerning the effects upon various components of electrical systems of being struck by lightning or falling tree limbs. The court refused to permit him to answer these questions. The record does not indicate that Mr. Marr possessed any special training, experience or knowledge which would render him qualified to express an opinion as to the effect of such stimuli on an electrical distribution system, therefore it was not error to exclude his answers. *State v. Puckett*, 54 N.C. App. 576, 284 S.E. 2d 326 (1981). Moreover, even assuming, *arguendo*, that he was qualified to answer the questions, defendant has suffered no prejudice because substantially the same evidence was admitted through the testimony of defendant's electrical engineering expert, Harold Nash. "Where evidence of similar import to that which was improperly excluded is admitted at other times in the trial, the exclusion will not be held to be prejudicial error." *State v. Smith*, 294 N.C. 365, 377, 241 S.E. 2d 674, 681 (1978).

[7] Defendant also complains that the trial court limited the effect of Mr. Marr's testimony by an improper instruction given in connection with his use of an exhibit. Mr. Marr had prepared a representational model of a residential power service hook-up from a transformer pole to a house, similar to the service that existed at the Leary cabin on the date of the fire. Mr. Marr sought to use the exhibit to explain his testimony concerning the effect of tension on the lines at the service masthead if struck by a falling object. The court instructed the jury: "You can accept this *testimony* for the purpose of illustrating Mr. Marr's testimony if you find it illustrates his testimony and for that limited purpose alone." (Emphasis supplied.) However, before the witness answered, the court immediately corrected the instruction by telling the jury that they were not to accept the exhibit "as any type of experiment. You are simply to accept this as illustrating Mr. Marr's testimony. It's not an experiment. It's just an illustration." Considered contextually, it is apparent that the instructions limited the jury's consideration of the *exhibit*, rather than Mr. Marr's *testimony*, to illustrative purposes. The court's *lapsus linguae* in referring to "testimony," rather than the exhibit, in the initial in-

structions was simply an inadvertence, promptly corrected, and could not have affected the outcome of the trial. *See Barnes v. House*, 253 N.C. 444, 117 S.E. 2d 265 (1960); *Wesley v. Greyhound Lines, Inc.*, 47 N.C. App. 680, 268 S.E. 2d 855 (1980).

[8] During the direct examination of Mr. Nash, he was asked to identify the weakest part of an electrical distribution system such as the one providing service to the Learys' cabin. The plaintiffs objected and the objection was sustained. The record reflects that Mr. Nash would have answered, "[t]he wire holder on the transformer end." Defendant sought to introduce this evidence in support of its theory that the line, upon being struck by a tree limb, would break, if at all, at the transformer rather than at the masthead on the cabin. While we believe that the evidence was competent and that Mr. Nash was qualified to express his opinion in response to the question, we perceive no prejudice in the ruling. Other evidence showed that several months preceding the fire, another tree limb had fallen on the wire and pulled the line loose from the transformer, but not the masthead. Mr. Nash was permitted to testify that the earlier limb had created a greater force on the line than the one which fell in February 1981. He also testified that after the fire in February, the wire was still attached to, and had not been pulled loose from, the transformer. This led him to the conclusion that since the earlier limb had not exerted sufficient force to break the line at the masthead, neither did the limb which allegedly struck the line before the fire. This evidence had substantially the same meaning as that which was excluded, i.e., that the wire would break from the transformer before such force as would cause it to break at the masthead could be applied. Thus, the exclusion of Mr. Nash's answer as to the weakest part of the system was harmless error. *See Terrell v. Insurance Co.*, 269 N.C. 259, 152 S.E. 2d 196 (1967) (other evidence "with substantially the same meaning" allowed); *Delp v. Delp*, 53 N.C. App. 72, 280 S.E. 2d 27 ("essence of testimony" presented to jury), *disc. rev. denied*, 304 N.C. 194, 285 S.E. 2d 97 (1981).

[9] Defendant also assigns error to the court's refusal to instruct the jury to disregard a portion of plaintiffs' jury argument. During his jury argument, Mr. Ball, counsel for Maryland Casualty Company, read from the Supreme Court's decision in *Snow v. Power Co.*, 297 N.C. 591, 256 S.E. 2d 227 (1979). Defense counsel objected on the grounds that the case was not similar to the pres-

ent case. *Snow* is not so dissimilar to the present case as to be irrelevant *per se*; moreover, the arguments were not included in the record, and we are therefore unable to determine what portions of the Supreme Court's opinion in *Snow* were read, or whether it was improperly argued to the jury. In any event, the trial court, before permitting Mr. Ball to proceed with his argument, gave the following instruction:

> Members of the jury, the attorney is allowed to read to you cases that have been decided by appellate courts, and I'll caution you to remember that the factual situation in the case he may read to you may be different than the factual situation in this particular case, and what he is going to read to you is a position that our Supreme Court has taken in the case that he had before him there.

This instruction corrected any impropriety which may have occurred in connection with counsel's reading from *Snow. See Wilcox v. Motors Co.*, 269 N.C. 473, 153 S.E. 2d 76 (1967) (reviewing cases). This assignment of error is overruled.

In its final assignment of error directed to the conduct of the trial itself, defendant argues that the court erred in denying its motions for directed verdict and judgment notwithstanding the verdict, because a cumulation of all of the foregoing alleged errors amounted to a denial of a fair trial. Having addressed each issue raised by defendant and having concluded that defendant has failed to demonstrate prejudicial error with regard to any of them, we deem the argument to be without merit and overrule this assignment of error.

## POST-TRIAL

[10] Defendant's principal post-trial assignments of error are directed to the court's award of prejudgment interest on the principal amount of the judgment. Defendant first asserts that G.S. 24-5 is unconstitutional. This issue has been recently and definitively decided against defendant by the North Carolina Supreme Court. *See Lowe v. Tarble*, 312 N.C. 467, 323 S.E. 2d 19 (1984), *aff'd on rehearing*, 313 N.C. 460, 329 S.E. 2d 648 (1985); *Powe v. Odell*, 312 N.C. 410, 322 S.E. 2d 762 (1984). Defendant further contends, however, that the trial court erred in applying the provisions of G.S. 24-5 to that portion of the damage award which was not covered by liability insurance. We agree.

G.S. 24-5 provides in pertinent part:

. . . The portion of all money judgments designated by the fact-finder as compensatory damages in actions other than contract shall bear interest from the time the action is instituted until the judgment is paid and satisfied and the judgment and decree of the court shall be rendered accordingly. *The preceding sentence shall apply only to claims covered by liability insurance. The portion of all money judgments designated by the fact-finder as compensatory damages in actions other than contract which are not covered by liability insurance shall bear interest from the time of the verdict until the judgment is paid and satisfied, and the judgment and decree of the court shall be rendered accordingly.* [Emphasis supplied.]

In *R-Anell Homes v. Alexander & Alexander*, 62 N.C. App. 653, 303 S.E. 2d 573 (1983), this court held that an insured defendant which defended the suit on its own because plaintiff's claim did not exceed the deductible amount of its liability policy was not liable for prejudgment interest. We pointed out that plaintiff's claim was not, therefore, covered by liability insurance and said "there is no logical reason to distinguish between claims against an uninsured defendant and an insured defendant defending a claim which falls short of the deductible amount of the insurance policy." *Id.* at 661, 303 S.E. 2d at 578. In *Powe v. Odell, supra*, the Supreme Court recognized "fundamental differences" between self-insurers and liability insurance companies, and reasoned that the legislative provision for prejudgment interest achieved a legitimate policy goal, i.e., providing an incentive for liability insurance companies to speed up the resolution of claims, rather than delay resolution in order to maximize the return of investment on loss reserves required by statute.

In this case, defendant's liability policy provided for a $200,000.00 deductible. To the extent of its deductible, defendant was a self-insurer and the first $200,000.00 of the judgment for compensatory damages awarded to plaintiffs was not covered by liability insurance. Under the provisions of G.S. 24-5, the portion of judgments for compensatory damages which are not covered by liability insurance bear interest from the time of the verdict rather than from the time the action is instituted. The award of

prejudgment interest on the first $200,000.00 of the judgment must be set aside.

We have also considered defendant's contention that it was entitled to a stay of execution by reason of plaintiffs' cross appeal. G.S. 1-289 and G.S. 1A-1, Rule 62(d) govern stays of execution of money judgments. Upon compliance with these statutes by defendant, execution of the judgment was stayed. This assignment of error is overruled.

[11] By cross appeal, plaintiffs assign error to the court's reduction, *ex mero motu*, of the jury verdict for damages to the cabin. This assignment is well taken.

In its judgment, the court ordered that $10,000.00 of the verdict for damage to the cabin be remitted "because it exceeded the amount prayed for" by Maryland Casualty Company. While Maryland Casualty Company sought recovery for only $35,000.00, its subrogation interest, plaintiffs Leary sought recovery for damages to the cabin as well as to its contents in the total sum of $210,000.00. The plaintiffs presented evidence tending to show that the fair market value of the cabin before the fire was $45,000.00 and that it had no value after the fire. Such evidence supported the jury's verdict that the plaintiffs were entitled to recover $45,000.00 for damage to the cabin.

Under G.S. 1A-1, Rule 59, and prior North Carolina law, a trial judge may reduce the verdict in his own motion in the event of excessive damages, as long as the party in whose favor the verdict was rendered does not object. *Redevelopment Comm. v. Holman*, 30 N.C. App. 395, 226 S.E. 2d 848, *disc. rev. denied*, 290 N.C. 778, 229 S.E. 2d 33 (1976). Without the assent of the party in whose favor the verdict was rendered, however, the court has no authority to reduce the verdict and enter judgment for the reduced amount. *Brown v. Griffin*, 263 N.C. 61, 138 S.E. 2d 823 (1964). Plaintiffs objected to a reduction in the verdict. Consequently, the court erred in reducing it. The Learys were entitled to the remaining $10,000.00 over and above the insurer's subrogation interest.

[12] Plaintiffs also assign error to the court's order sustaining defendant's objections to various costs taxed by the clerk. Plaintiffs contend that the trial judge had no jurisdiction to review the

clerk's order approving and taxing those costs requested by plaintiffs because defendant did not comply with the provisions of G.S. 1-272 in seeking review of that order. We find no merit in this assignment of error.

The provisions of G.S. 1-272 apply only to appeals from the clerk in proceedings in which the clerk has original jurisdiction. *Moody v. Howell*, 229 N.C. 198, 49 S.E. 2d 233 (1948). Taxation of costs is not a proceeding in which the clerk has original jurisdiction. G.S. 6-7 provides that "[t]he clerk of superior court shall enter in the case file, after judgment, the costs allowed by law"; however, the act of the clerk in taxing the costs is ministerial and is subject to revision by the trial judge. *Young v. Connelly*, 112 N.C. 646, 17 S.E. 424 (1893). The trial judge has supervisory power over the action of the clerk in taxing the costs. *Cureton v. Garrison*, 111 N.C. 271, 16 S.E. 338 (1892); *In re Smith*, 105 N.C. 167, 10 S.E. 982 (1890). In some instances, the judge must authorize the amount of the fees to be taxed as a part of the costs. *See, e.g.* G.S. 7A-314(d) (compensation for expert witness to be set by court); G.S. 7A-314(f) (compensation for interpreter to be set by court). G.S. 6-19.1, G.S. 6-19.2, G.S. 6-21.1 (allowance of attorney fees in certain cases). We hold that the court, in the exercise of its supervisory powers, had jurisdiction to review the clerk's order setting the costs.

Aside from their argument that the court had no authority to adjust the costs allowed by the clerk, plaintiffs have not assigned error to any specific item of costs disallowed by the court. Defendant attempts to argue that the court erred in not reducing the costs further, but has failed to preserve the matter for review by appropriate exceptions and assignments of error. Accordingly, we decline to disturb the trial court's order relating to costs.

In summary, we find no error in the trial of this cause, but remand for entry of judgment in the full amount of the verdict, bearing interest on the first $200,000.00 from the time of verdict, and on the balance of the judgment from the time this action was instituted.

No error in the trial; remanded for entry of judgment in accordance with this opinion.

Judges ARNOLD and PARKER concur.