918 F.2d 955
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Plaintiff-Appellee,
v.
UNITED STATES FIRE INSURANCE COMPANY, Defendant-Appellant.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Plaintiff-Appellant,
v.
UNITED STATES FIRE INSURANCE COMPANY, Defendant-Appellee.
 No. 89-2172, 89-2174.
 United States Court of Appeals, Fourth Circuit.
 Argued April 4, 1990.
Decided Nov. 21, 1990.
 
 1
 Appeals from the United States District Court for the Eastern District of North Carolina, at Fayetteville. Malcolm J. Howard, District Judge. (CA-88-29-3-CIV)
 
 
 2
 Walter Edgar Brock, Jr., Young, Moore, Henderson & Alvis, P.A., Raleigh, N.C. (argued) for appellant; David M. Duke, Young, Moore, Henderson & Alvis, P.A., Raleigh, N.C., on brief.
 
 
 3
 Susan K. Burkhart, Ronald Conrad Dilthey, Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, Raleigh, N.C., for appellee.
 
 
 4
 E.D.N.C., 710 F.Supp. 164.
 
 
 5
 AFFIRMED.
 
 
 6
 Before DONALD RUSSELL and CHAPMAN, Circuit Judges, and GARBIS, United States District Judge for the District of Maryland, Sitting by Designation.
 
 GARBIS, District Judge:
 
 7
 The Hartford Accident and Indemnity Company ("Hartford") brought a declaratory judgment action against United States Fire Insurance Company ("U.S. Fire") in order to determine which of these two insurance carriers should pay the portion of a settlement of claims against their insured which the carriers allocated as pre-judgment interest. On cross-motions for summary judgment, the district court held that the sum allocated as prejudgment interest should be paid pro rata by each carrier, in proportion to the amount each carrier paid out in settling the underlying claims. Both parties appeal from that ruling. In addition, because Hartford paid the entire sum allocated as prejudgment interest pending a determination of which carrier was ultimately liable, Hartford sought prejudgment interest on the prejudgment interest owed by U.S. Fire that Hartford had previously paid. Hartford appeals from the district court's denial of prejudgment interest on that sum.
 
 
 8
 Florence Concrete Products, Inc., was insured by Hartford under a general liability insurance policy with effective dates of July 1, 1983, to July 1, 1984, and combined single limit coverage of $500,000. Florence Concrete was also insured by U.S. Fire under a commercial umbrella liability insurance policy providing umbrella coverage of $5 million and bearing the same effective dates as the Hartford policy, which was set forth in the schedule of underlying insurance. Florence Concrete renewed its policy with Hartford for the year July 1, 1984, to July 1, 1985. Florence Concrete did not renew its umbrella policy with U.S. Fire. Therefore, Florence had primary (Hartford) and umbrella (U.S. Fire) coverage for the period July 1, 1983, to July 1, 1984, and primary coverage (Hartford) only for the period July 1, 1984, to July 1, 1985.
 
 
 9
 The underlying claims arose from the construction of a condominium project in North Carolina known as Pelican Watch Condominiums ("Pelican Watch"). The carriers' insured, Florence Concrete, was a sub-contractor to Faircloth Enterprises, Inc., the general contractor. Four events in 1984 damaged the project, allegedly due to the fault of Florence Concrete. On February 2, concrete forms supplied by Florence Concrete failed, causing the partial collapse of an elevator shaft. On April 11, a fire broke out, allegedly due to improper welding by Florence Concrete workers. On July 13, another fire broke out, allegedly due to the same cause. On September 13, Hurricane Diana struck, and the damage it caused was allegedly exacerbated by Florence Concrete's prior negligence.
 
 
 10
 The insurance coverage situation was the following:
 
 
 11
 Basic (Hartford) and Umbrella (U.S. Fire) Coverage:
 February 2 forms collapsed
 April 11 first fire
Basic (Hartford) Coverage only:
 July 13 second fire
 September 13 hurricane
 
 
 12
 Pelican Watch sued Faircloth and Florence Concrete in Cumberland County Superior Court on October 24, 1984, alleging the events indicated above and claiming damages against Florence Concrete of approximately $4.5 million. In addition, Faircloth sought damages from Florence Concrete of approximately $1.2 million.
 
 
 13
 Both carriers were notified of the Pelican Watch claims before suit was filed. After suit was filed, Hartford undertook to defend its insured. Although U.S. Fire opened a claims file and had its claims manager attend conferences with representatives of the parties in November 1984, it did not undertake to defend its insured. Rather, after Hartford formally notified U.S. Fire in September 1985 that the claimant's demand would substantially exceed Hartford's policy limits, U.S. Fire responded that it expected Hartford "to vigorously defend and dig out facts to evaluate the case up until your limits are officially exhausted." Supplemental Appendix ("Supp.App.") 60-61.
 
 
 14
 Two weeks before the trial date of June 23, 1986, U.S. Fire retained an attorney to represent its interests. U.S. Fire's attorney cooperated with Hartford's attorney and participated in settlement negotiations. Until June 23, no settlement offer had been made on behalf of Florence Concrete.[1] After some negotiations, Pelican Watch and Faircloth lowered their demand to a total of $4.5 million, inclusive of interest and costs, in full settlement of all claims. Although the carriers had continued to dispute certain issues, including whether Hartford was liable under its renewal policy for the damage allegedly occurring after July 1, 1984, and if so, whether Hartford was obligated to exhaust both policies before U.S. Fire would have to contribute to the settlement, a settlement was ultimately completed and memorialized in a consent judgment filed in Superior Court. Joint Appendix ("J.A.") 130-33.
 
 
 15
 Under the settlement, Hartford paid $690,000 on behalf of Florence Concrete, allocating the award internally as $500,000 against the 1983-84 policy and $190,000 against the 1984-85 policy. U.S. Fire paid $3,190,000 under the settlement. As part of the settlement and in order to bring the total to $4.5 million, the parties agreed to pay an additional sum of $620,689.66 that they designated to be prejudgment interest. However, the carriers disagreed as to which of them was obligated to pay such interest.[2] In order that the total settlement be paid but to preserve the issue for later resolution, the insurers filed a "Motion in the Cause" in Superior Court, requesting a preliminary determination as to which carrier should pay the sum pending a later resolution of the dispute. J.A. 74-76. The state judge ruled that Hartford should pay the sum allocated as prejudgment interest, pending a later proceeding. J.A. 77-78. Hartford paid that sum as part of the settlement.
 
 
 16
 Hartford subsequently filed the declaratory judgment action on which this appeal is based. On cross-motions for summary judgment, the district court held that the sum allocated as prejudgment interest should be shared pro rata by the two carriers, in proportion to their contributions to the total settlement. J.A. 438-49.
 
 
 17
 Following that ruling, Hartford moved under Fed.R.Civ.P. 15 for leave to amend the complaint to include a claim for prejudgment interest on the portion of the prejudgment interest it initially paid in U.S. Fire's behalf that U.S. Fire was obligated to repay. Hartford also moved under Fed.R.Civ.P. 59 to amend the judgment so that it could receive that relief. U.S. Fire moved under Rule 59 to amend the judgment, asserting some of the arguments it now makes on appeal and offering a calculation of what its pro rata share of the prejudgment interest would be.
 
 
 18
 The district court denied these motions and ordered U.S. Fire to pay Hartford the sum of $508,965.53 as its pro rata share of the prejudgment interest previously paid by Hartford. Hartford, therefore, was responsible only for its pro rata share of the prejudgment interest award, totalling $111,724.13. The district court further denied Hartford's request for prejudgment interest on U.S. Fire's share of the prejudgment interest Hartford had previously paid. These cross-appeals followed.
 
 
 19
 U.S. Fire argued below, and argues on appeal, that Hartford is liable for the full sum allocated as prejudgment interest. U.S. Fire argues that North Carolina law applies to this case, and that under North Carolina law prejudgment interest is considered a "cost." Therefore, since Hartford's policy indicates it is liable for all "costs" taxed against its insured, Hartford must pay the whole sum allocated as prejudgment interest. In addition, U.S. Fire argues that Hartford is liable for such "costs" even if they cause the insurer's overall payout to exceed the policy limits. U.S. Fire also asserts that it had no obligation under its insurance contract to pay any portion of such costs. Moreover, U.S. Fire argues that even under South Carolina law, Hartford is liable for the whole prejudgment interest award. In the alternative, U.S. Fire argues that if the award of prejudgment interest is held to be "damages," then Hartford must exhaust an additional $310,000 of unused liability coverage under its 1984-85 policy. Under that theory, U.S. Fire would be liable for only the remaining $310,000 of the award.
 
 
 20
 Hartford argued below, and argues on appeal, that it is not obligated for any portion of the award for prejudgment interest because South Carolina law applies to this question. Under South Carolina law, according to Hartford, pre-judgment interest is considered "damages," not "costs," and Hartford is liable for "damages" only up to its 1983-84 policy limits of $500,000. Hartford argues that only the earlier policy applies, because at the time of the settlement Hartford did not admit liability under the later policy and that, in any event, under the settlement U.S. Fire consented to Hartford's tendering of less than the limits of the two policies combined. In the alternative, Hartford seeks affirmance of the district court's ruling that the parties must share the prejudgment interest award pro rata, in proportion to their shares of the total settlement. Finally, Hartford seeks reversal of the district court's denial of its motions to receive prejudgment interest on U.S. Fire's portion of the prejudgment interest award that Hartford originally paid.
 
 
 21
 Under the North Carolina statute in effect at the time the underlying complaint was filed,
 
 
 22
 The portion of all money judgments designated by the fact-finder as compensatory damages in actions other than contract shall bear interest from the time the action is instituted until the judgment is paid and satisfied, and the judgment and decree of the court shall be rendered accordingly. The preceding sentence shall apply only to claims covered by liability insurance. The portion of all money judgments designated by the fact-finder as compensatory damages in actions other than contract which are not covered by liability insurance shall bear interest from the time of the verdict until the judgment is paid and satisfied, and the judgment and decree of the court shall be rendered accordingly.
 
 
 23
 N.C.Gen.Stat. Sec. 24-5 (1981).[3] In allocating a portion of the settlement payment as pre-judgment interest, the parties were apparently following what they perceived to be the requirements of North Carolina law.[4]
 
 
 24
 No North Carolina decision cited to the court addresses the allocation of prejudgment interest between a primary and an excess insurer where the underlying claim clearly was going to exceed the primary coverage. In Lowe v. Tarble, 313 N.C. 460, 329 S.E.2d 648 (1985), the Supreme Court of North Carolina held that prejudgment interest was to be considered a "cost" in determining that the insurer would be liable for such interest under a policy provision stating that the insurer would pay "all costs taxed against the insured." Id., 329 S.E.2d at 651. It makes sense that, as between the insurer and the insured, such interest ought to be paid by the insurer, who is in the position to control the litigation and thus determine how much interest is being accrued. Unfortunately, that rationale does not enlighten this court in determining who, as between a primary carrier and an excess carrier, ought to pay prejudgment interest accruing on a claim that clearly exceeds the underlying insurance and will intrude into the excess coverage.
 
 
 25
 If viewed as a cost, prejudgment interest ought to be split pro rata between these two carriers. One reason for imposing such interest is to provide insurers with an incentive to resolve claims quickly, rather than delay resolution in order to maximize return of investment on reserves that will have to be paid out. See Leary v. Nantahala Power & Light Co., 76 N.C.App. 165, 332 S.E.2d 703 (1985). Although Hartford was in substantial control of the underlying litigation from the filing of the complaint in October 1984 until two weeks before trial in June 1986, U.S. Fire was on notice from the very beginning that any ultimate settlement would exceed the primary insurance and lead to liability under the umbrella policy. U.S. Fire could have seen the need to become involved in defending the underlying suits far earlier than it did. By the same token, Hartford did not attempt to tender its policy limits in satisfaction of its liabilities and thus require U.S. Fire to step in. Therefore, holding that such a "cost" was applicable to both primary and excess carriers in this situation would encourage earlier recognition of the extent of liability and earlier settlement of underlying claims.[5]
 
 
 26
 Alternatively, prejudgment interest could be seen as an element of "damages." The district court viewed such interest in this way, recognizing that another reason for awarding prejudgment interest is to compensate the plaintiff for the harm suffered and make the plaintiff whole. J.A. 443-44. If such interest is considered an element of "damages," the district court's decision to apportion such damages pro rata is equally reasonable. The parties reached an agreement to settle the claims against Florence Concrete, and it would best advance the terms of that agreement to apportion these additional damages in proportion to the liabilities each already undertook.[6]
 
 
 27
 The court's decision is supported by cases from other states. In Celina Mut. Ins. Co. v. Citizens Ins. Co., 133 Mich.App. 655, 349 N.W.2d 547 (1984), the court held that prejudgment interest on a claim settled by a primary and excess insurer should be allocated between the carriers in proportion to their contributions to the settlement. That court held that "pro rata apportionment of liability for prejudgment interest is the better result, because otherwise insurers will be required to pay interest on risks they have not assumed and because a good faith vigorous defense of an action is in the interests of all potentially liable parties." Id., 349 N.W.2d at 549-50. In that case, as here, the excess insurer was on notice the claim would exceed the underlying coverage. Also, again as in this case, the primary insurer did not tender its policy limits to the insured, which would have caused prejudgment interest to stop accruing against it. The court cited other states reaching the same conclusion, although it recognized that these decisions were in the minority. Id. at 550. Nevertheless, the court felt that the decision "leads to a more equitable distribution of the cost of litigation among the insurers." Id. We agree with the Celina court's holding and believe North Carolina would follow that reasoning.
 
 
 28
 As to Hartford's cross-appeal from the district court's denial of prejudgment interest on the U.S. Fire portion of the prejudgment interest that Hartford paid out pending resolution of the allocation issue, we affirm the holding of district court on this point as well. The district court noted that such an award was within the discretion of the court. J.A. 467. Hartford cited no authority to the district court or on appeal that such interest is required as a matter of law, and Hartford's equitable subrogation theory likewise does not compel the court to award such interest. The district court did not abuse its discretion in denying Hartford such prejudgment interest.
 
 
 29
 Under the circumstances of this case, given the circumstances in which settlement was finally reached and the terms of the settlement as it was finally approved, the district court allocated the prejudgment interest portion of the settlement properly. In addition, the district court did not abuse its discretion in denying Hartford prejudgment interest on U.S. Fire's portion of the prejudgment interest. For the foregoing reasons, the judgment of the district court is
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 After the district court entered its order in the declaratory judgment action giving rise to this appeal, both Hartford and U.S. Fire settled claims with their insured, Florence Concrete, for bad faith refusal to settle. See Florence Concrete Prods. v. United States Fire Ins. Co., C/A No. 4:86-2716-0 (D.S.C.1989)
 
 
 [2]
 In settlement negotiations, Hartford had originally offered $500,000 under the 1983-84 policy and U.S. Fire had offered $3 million under its umbrella policy. After the claimants lowered their original demand to $4.5 million in settlement of all claims, including costs and interest, the insurers raised their offer to include the $620,000 in prejudgment interest, subject to their later determining which insurer would be responsible for that sum. After Hartford's negotiator received additional authority to offer $190,000 under the 1984-85 policy, the parties split the difference on the remaining $380,000 needed to meet the claimants' demand. Hartford Br. at 4-6
 
 
 [3]
 In 1985, the statute was amended to provide: "In an action other than contract, the portion of money judgment designated by the fact finder as compensatory damages bears interest from the date the action is instituted until the judgment is satisfied." N.C.Gen.Stat. Sec. 24-5(b) (1985). Since the complaint in the underlying action was filed in 1984 before the statute was amended, it is governed by the earlier version of the statute. Petty v. Housing Auth. of Charlotte, 90 N.C.App. 559, 369 S.E.2d 612, 614 (1988). Thus, at the time the underlying complaint was filed, pre-judgment interest was required to be paid on non-contract actions only where the damages were covered by liability insurance
 
 
 [4]
 Under the circumstances, Hartford's argument that South Carolina law applies to this case is unconvincing. The consent judgment was filed in a North Carolina state court. In allocating some of the settlement proceeds as prejudgment interest, the parties apparently assumed the North Carolina prejudgment interest statute applied; after all, as Hartford concedes, South Carolina does not allow prejudgment interest in contract and tort cases where, as here, the amount is unliquidated. Hartford Br. at 19; see S.C.Code Ann. Sec. 34-31-20(A) ("in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law," interest shall accrue at the legal rate). Hartford further concedes that "South Carolina courts have not considered the precise issue raised by this case." Hartford Br. at 18. It makes little sense to attempt to answer this question under the law of a state in which the question simply will not arise. In any event, it seems reasonable that in interpreting the parties' settlement the court should interpret it under the law the parties assumed to apply
 
 
 [5]
 That both insurers later settled claims against them for bad faith refusal to settle seems to support the notion that both insurers could have settled the claims more expeditiously
 
 
 [6]
 The court discounts Hartford's argument that if such interest is viewed as damages it should not have to pay prejudgment interest in excess of its policy limits. By agreeing to pay $190,000 in excess of its 1983-84 policy limit and by allocating that payment to the 1984-85 policy, Hartford in some sense acknowledged liability under that policy. Therefore, the $111,000 it must pay under a pro rata allocation would still fall within the limits of the two policies under which it accepted the responsibility to pay the insured's claims
 However, the court does not accept U.S. Fire's contention that because Hartford paid $310,000 less than its total limit of liability under the two policies, if such interest is viewed as damages Hartford must now exhaust the remaining $310,000 before U.S. Fire's obligation to pay arises. Although as an excess carrier U.S. Fire would ordinarily not be required to pay on its umbrella policy until the schedule of underlying insurance had been exhausted, the second Hartford policy was not listed on the umbrella policy's schedule. In any event, U.S. Fire knew about both policies and agreed to a settlement in which Hartford would pay less than its total limit of liability under the two policies. In addition, U.S. Fire agreed to this settlement when it was apparent that at least some of the underlying property damage may have been suffered after the expiration of its umbrella policy on July 1, 1984. In coming to a settlement, the parties set aside all of their arguments and agreed to pay the amounts indicated. U.S. Fire cannot now complain that Hartford did not pay enough under a settlement to which U.S. Fire agreed.