Red Valve, Inc. v. Titan Valve, Inc., 2019 NCBC 4.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 1064

RED VALVE, INC.; and
HILLENBRAND, INC.,

        Plaintiffs,

v.

TITAN VALVE, INC.; BEN PAYNE;
FABIAN AEDO ORTIZ; GREG
FARRIS; and JOHN DOES 1-10,

        Defendants.

**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR
SANCTIONS**[1]

1.    **THIS MATTER** is before the Court upon Plaintiffs' Motion for Sanctions (the "Motion for Sanctions" or the "Motion") in the above-captioned case.

2.    Having considered the Motion for Sanctions, the briefs in support of and in opposition to the Motion, and the arguments of counsel at the December 18, 2018 hearing (the "December 18 Hearing") on the Motion, the Court hereby **GRANTS** the Motion, **ENTERS** the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**, and **ORDERS** as follows.

> *Nelson Mullins Riley & Scarborough LLP, by David N. Allen, Benjamin S. Chesson, and Anna Majestro, for Plaintiffs Red Valve, Inc. and Hillenbrand, Inc.*
>
> *Gray, Layton, Kersh, Solomon, Furr & Smith, P.A., by Michael L. Carpenter, Marshall P. Walker, and Christopher L. Welchel, and Bell,*

---

[1] Recognizing that this Order and Opinion cites and discusses the subject matter of documents that the Court has previously allowed to remain filed under seal in this case, the Court elected to file this Order and Opinion under seal on January 11, 2019. The Court permitted the parties an opportunity to advise whether the Order and Opinion contained confidential information that either side contended should be redacted from a public version of this document. Plaintiffs and Defendants subsequently advised the Court that no redactions are necessary. Accordingly, the Court removes the "filed under seal" designation and files this Order and Opinion, without redactions, as a matter of public record.

*Davis & Pitt, P.A., by Derek Bast and Edward B. Davis, for Defendants Titan Valve, Inc, Ben Payne, Fabian Aedo Ortiz, and Greg Farris.*[2]

Bledsoe, Chief Judge.

I.

FINDINGS OF FACT

3.     Plaintiffs filed a Verified Complaint initiating this action on March 14, 2018. Plaintiffs asserted claims against Defendants Titan Valve, Inc. ("Titan"), Ben Payne ("Payne"), Fabian Aedo Ortiz ("Aedo"), and Greg Farris ("Farris") (collectively, "Defendants") arising out of Defendants' alleged wrongful conduct in acquiring, possessing, and using Red Valve's alleged confidential and proprietary information in a competing valve manufacturing company that they created shortly before Payne and Aedo's March 14, 2018 termination from Red Valve.

4.     At the same time Plaintiffs filed their Verified Complaint, they also filed a Notice of Designation, as well as a Motion for a Temporary Restraining Order (the "TRO Motion") and Motion for Preliminary Injunction (the "P.I. Motion"). The TRO and P.I. Motions sought injunctive relief based on Plaintiffs' claims for misappropriation of trade secrets against all Defendants and for breach of contract against Aedo.

5.     This case was designated as a complex business case later that same day by the Chief Justice of the Supreme Court of North Carolina and assigned to the undersigned.

---

[2] Attorneys from Bell, Davis & Pitt, P.A. first appeared as counsel of record for Defendants in this action on October 18, 2018.

6.     Promptly upon designation, the Court held a hearing on the TRO Motion, *ex parte*, at which Plaintiffs' counsel was present. At the conclusion of the on March 14 hearing, the Court entered a temporary restraining order (the "TRO"), which became effective immediately and was scheduled to expire on March 24, 2018. Among other things, the TRO required that Defendants "return to Red Valve any and all Red Valve property in their possession, including any property containing Red Valve's Trade Secrets or any other confidential and proprietary information of Red Valve" within three days of entry of the TRO. (TRO 6, ECF No. 7.) On March 22, 2018, the Court granted the parties' joint motion to extend the TRO and scheduled the hearing on the P.I. Motion for April 5, 2018.

7.     On March 28, 2018, Plaintiffs filed a motion for expedited discovery (the "Expedited Discovery Motion") in preparation for the hearing on the P.I. Motion. The Court held a telephone hearing on the Expedited Discovery Motion the following day, March 29, 2018. The Court entered an Order on March 30, 2018 memorializing its oral ruling at the telephone hearing, granting in part and denying in part the Expedited Discovery Motion (the "Expedited Discovery Order"). (Order Pls.' Mot. Expedited Disc. [hereinafter "Expedited Disc. Order"], ECF No. 23.) The Expedited Discovery Order required Defendants to produce the following to Plaintiffs no later than April 3, 2018:

i.   all materials containing Red Valve's Trade Secrets, as defined in the Court's March 14, 2018 TRO.
ii.  all marketing and/or promotional materials related to Titan Valve's products.
iii. all photographs or renderings identifying, describing, or depicting any product sold or planned to be sold by Titan Valve.

iv. all documents describing all efforts undergone to create Titan Valve prior to March 14, 2018.

(Expedited Disc. Order 5.)

8. The Expedited Discovery Order further provided that:

Defendants shall examine their email accounts (personal or otherwise) and no later than 3:00 PM on April 3, 2018 "return to Red Valve any and all Red Valve property in their possession, including any property containing Red Valve's Trade Secrets [as defined in the TRO] or any other confidential and proprietary information of Red Valve," as required at paragraph 3 on page 6 of the TRO.

(Expedited Disc. Order 5 (quoting TRO 6).)[3] For purposes of this Opinion, the Court refers to the obligation imposed by the portion of the Expedited Discovery Order discussed in paragraph 7 above as the "Expedited Discovery Order" and the portion of that Order discussed in paragraph 8 above as the "Return Order."

9. On April 3, 2018, Defendants produced to Plaintiffs approximately 3,215 files in a variety of formats, without distinguishing files produced in response to the Return Order from those produced in response to the Expedited Discovery Order (the "April 3 Production"). Later the same day, Defendants produced twenty-one

---

[3] The Expedited Discovery Order also permitted Plaintiffs to take a Rule 30(b)(6) deposition of Titan on a specific list of topics on April 4, 2018. Titan then timely designated Farris to testify as its Rule 30(b)(6) deponent. Farris testified that, in preparing for the deposition, he spoke to Payne and Aedo "[p]robably no more than 20 minutes." (Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. A, at 5:23–25 [hereinafter "Titan Dep."], ECF No. 92.) Farris further testified that he did not review any e-mails in preparation of the Rule 30(b)(6) deposition and did not know whether he had reviewed any of the documents contained in the April 3 Production. (Titan Dep. at 6:10–22.) Although Plaintiffs have not advanced Farris's evident lack of preparation for Plaintiffs' Rule 30(b)(6) deposition of Titan as a basis for sanctions, the Court nevertheless notes its concern that Titan does not appear to have taken seriously its obligations under Rule 30(b)(6).

additional screenshots of certain text messages exchanged between the individual Defendants.

10. The Court held a hearing on the P.I. Motion on April 5, 2018, at which all parties that have appeared in this action were represented by counsel. With the parties' consent and for good cause shown, the Court entered an Order on April 5, 2018 extending the TRO until April 10, 2018. (Order Extending TRO, ECF No. 33.)

11. On April 10, 2018, the Court entered an Order and Opinion on Plaintiffs' P.I. Motion (the "P.I. Order"), as corrected on April 17, 2018. *See Red Valve, Inc. v. Titan Valve, Inc.*, 2018 NCBC LEXIS 41 (N.C. Super. Ct. Apr. 17, 2018). The P.I. Order restrained and enjoined "Defendants, and any persons or entities in active concert or participation with any of them . . . from using, disclosing, or distributing Plaintiffs' Customer Database, Price Data, Design Documents, and Protectable Manufacturing Processes" as defined in the P.I. Order. *Id.* at *43. Additionally, paragraph 85(b) of the P.I. Order required that each Defendant do the following on or before April 19, 2018:

> (i) return to Plaintiffs all of Plaintiffs' property, including but not limited to Plaintiffs' Trade Secrets, and (ii) certify under oath in a written statement filed with the Court that Defendant has returned to Plaintiffs all of Plaintiffs' property in Defendant's possession and further that Defendant does not retain or possess any Red Valve property.

*Id.*

12. Upon Defendants' request, by Order dated April 17, 2018 (the "Order Clarifying P.I."), the Court deferred the deadline for Defendants' performance under paragraph 85(b) of the P.I. Order as it related to Plaintiffs' electronically stored

information ("ESI") in Defendants' possession. (Order Clarifying P.I. 2–3, ECF No. 417.) The Order Clarifying P.I. required that the parties promptly meet, confer, and propose a return and preservation protocol concerning Defendants' return of ESI (the "Return Protocol") no later than April 27, 2018. (Order Clarifying P.I. 2.)[4]

14. Consistent with the Return Protocol,[5] Defendants produced to Plaintiffs in July 2018 the file path information for over 200,000 files on Defendants' computers. Plaintiffs subsequently identified eighty-two files that were not produced during Expedited Discovery, but appeared responsive to the Expedited Discovery Order based on identifying information contained in the file paths. On September 10, 2018, Plaintiffs' counsel provided Defendants with a list of the eighty-two files that, according to Plaintiffs, should have been produced pursuant to the Expedited Discovery Order. (Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. C, ECF No. 92.)

[4] The Order Clarifying P.I. did not extend the April 19, 2018 compliance date as to Plaintiffs' property in Defendants' possession that did not constitute Plaintiffs' ESI. (Order Clarifying P.I. 2–3.) On April 19, 2018, all Defendants certified under oath that they had returned to Plaintiffs all non-ESI property. (*See* Certification Fabian Oritz, ECF No. 48; Certification of Ben Payne, ECF No. 47; Certification of Greg Farris, ECF No. 46; Certification of Greg Farris on Behalf Titan Valve, Inc., ECF No. 45.)

[5] Between April and October 2018, the parties, with the Court's oversight and input through numerous hearings, negotiated and implemented a twenty-step Return Protocol through which Defendants were to locate, return, and delete all Red Valve property from devices and sources within the possession of Payne, Aedo, or Titan, and within the possession or control of Farris. The Return Protocol consisted of four phases: (i) device collection and imaging; (ii) identification of Red Valve property; (iii) preservation and return; and (iv) deletion. Based on Defendants' counsel's representations, it appears that the final phase of the Return Protocol—deletion—was completed on December 12, 2018.

Defendants disagreed, and the parties held a meet-and-confer on September 14, 2018 but were unable to resolve their dispute.

15. On September 21, 2018, Plaintiffs submitted to the Court a summary pursuant to Rule 10.9 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR") (the "10.9 Summary") alleging deficiencies with Defendants' April 3 Production. Plaintiffs specifically argued that the April 3 Production was (i) substantively deficient based on the file path information for unproduced files and (ii) procedurally deficient in that Defendants did not identify the documents responsive to the Expedited Discovery Order and the documents returned pursuant to the Return Order.

16. The Court convened a telephone conference on September 28, 2018 to address, among other things, the issues raised in the 10.9 Summary. The Court accepted Defendants' representation that "[t]o the extent any documents were missed in the rushed four-day Expedited Discovery review, Plaintiffs will receive those documents as part of the pending discovery requests[.]" The Court directed Defendants to produce the documents prior to the hearing scheduled for October 15, 2018.[6] After the Court issued its ruling, Plaintiffs' counsel indicated that Plaintiffs would reserve argument as to the missing documents until after production was made.

---

[6] The parties disagree as to whether the Court ordered Defendants during the September 28, 2018 telephone conference to produce the documents no later than October 15, 2018. While the Court did not issue a written order subsequent to the telephone conference, the Court's notes of the conference reflect that the Court ordered production by October 15.

17. Defendants did not produce any documents between September 28 and October 15, 2018. On October 16, 2018, Defendants produced 2,593 documents, nearly half of which were duplicative. Defendants supplemented their production on October 20, 2018 with an additional 839 documents.

18. Plaintiffs filed their Motion for Sanctions on November 5, 2018, including as Exhibit D fifty-eight documents that Plaintiffs contend were responsive to the Expedited Discovery Order but not timely produced (the "Pre-Filing Withheld Documents").[7] (*See* Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. D, ECF No. 92.)

19. On November 6, 2018, Defendants produced an additional 108 documents, which, according to Defendants, consisted primarily of documents that were inadvertently miscoded during the initial review. (Defs.' Resp. Opp'n Pls.' Mot. Sanctions 6–7, ECF No. 109.) On November 16, 2018, Defendants produced an additional 338 documents, including 254 messages from the individual Defendants' cellphones.

20. On November 21, 2018, Plaintiffs, with Defendants' consent, tendered via e-mail to the Court a proposed Supplemental Brief in Support of Motion for Sanctions.[8] (*See* Pls.' Suppl. Br. Supp. Mot. Sanctions, ECF No. 111.) Plaintiffs identified an additional forty-eight documents, all of which Defendants produced on November 6 or November 16, that Plaintiffs contend were responsive to the Expedited Discovery

---

[7] The fifty-eight Pre-Filing Withheld Documents were among the eighty-two files that were at issue in Plaintiffs' September 21, 2018 10.9 Summary.

[8] At the Court's direction, Plaintiffs subsequently filed their Supplemental Brief in Support of Motion for Sanctions on the Court's e-docket on November 29, 2018.

Order (the "Post-Filing Withheld Documents" and, together with the Pre-Filing Withheld Documents, the "Withheld Documents"). (*See* Pls.' Suppl. Br. Supp. Mot. Sanctions Ex. A, ECF No. 111.1.)

21.     The Motion is fully briefed, a hearing has been held, and the Motion is ripe for determination.

II.

CONCLUSIONS OF LAW

22.     As noted, paragraph 9(b) of the Expedited Discovery Order required Defendants to produce the following no later than April 3, 2018:

i.   all materials containing Red Valve's Trade Secrets, as defined in the Court's March 14, 2018 TRO.
ii.  all marketing and/or promotional materials related to Titan Valve's products.
iii. all photographs or renderings identifying, describing, or depicting any product sold or planned to be sold by Titan Valve.
iv.  *all documents describing all efforts undergone to create Titan Valve prior to March 14, 2018.*

(Expedited Disc. Order 5 (emphasis added).)  Critical to the resolution of the Motion is the parties' dispute over the meaning of the word "create" in paragraph 9(b)(iv) and thus the scope of production that was required under the Expedited Discovery Order.

23.     Defendants contend that paragraph 9(b)(iv) only extends to documents related to Titan's incorporation.  According to Defendants' narrow interpretation, "efforts to create Titan concluded on February 6, 2018" when its Articles of Incorporation were filed with the North Carolina Secretary of State.  (Defs.' Resp. Opp'n Pls.' Mot. Sanctions 13.)  Plaintiffs respond that paragraph 9(b)(iv) extends not only to incorporation-related documents, but also to those documents describing

efforts undertaken to launch Titan. Plaintiffs are correct, and the Court concludes that Defendants' restrictive interpretation is unreasonable and inconsistent with the Court's Expedited Discovery Order.

24. As an initial matter, at the time the Court entered the Expedited Discovery Order, the Court was aware that Titan was incorporated on February 6, 2018. (*See* Verified Compl. ¶ 74, ECF No. 3 ("On February 6, 2018, Defendant Farris incorporated Titan Valve with the North Carolina Secretary of State[.]").) The Court's Expedited Discovery Order, however, covered documents "describing all efforts undergone to create Titan Valve prior to March 14, 2018," a period extending six weeks after Titan's formal incorporation. (Expedited Disc. Order 5.) Had the Court intended paragraph 9(b)(iv) to cover only pre-incorporation documents, as Defendants argue it did, the Court would not have ordered the production of documents generated after Titan's February 6, 2018 incorporation.

25. Moreover, the Court's use of the word "create" in paragraph 9(b)(iv) in lieu of the word "incorporate" intentionally reproduced a proposed discovery request that Plaintiffs submitted in connection with the Expedited Discovery Motion. To create means "[t]o bring into being; to cause to exist; to produce; to make, for example, a machine or a corporation." *Create*, Ballentine's Law Dictionary (3d ed. 2010). As applied here, efforts undergone to create Titan necessarily included plans to lease property, plans concerning signage, logos, payroll and accounting systems, filings with governmental agencies, governance documents, and other activities necessary to begin operations as Titan. Lining up customers, vendors, and employees to join

Titan before operations began are also part of a course of conduct that brought Titan into existence. By adopting an unreasonably narrow definition of "create," Defendants failed to produce dozens of documents that were responsive to paragraph 9(b)(iv) of the Expedited Discovery Order and are relevant to core contentions at the heart of Plaintiffs' claims.

26. For example, Defendants failed to produce a December 2017 e-mail from Aedo to the other individual Defendants under the subject line "We are ! Presentation under development" with an attached presentation that Aedo stated was "to show who we are, our goals, how will we get there, what do we offer, etc." (Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. D, at 25.) In the same e-mail, Aedo included a list of four proposed names for the to-be-formed entity, one of which was "Titan." Although Defendants contend that this December 2017 e-mail is only "[a]rguably [r]esponsive" to paragraph 9(b)(iv), (Defs.' Resp. Opp'n Pls.' Mot. Sanctions Ex. B, at 2, ECF No. 109.3), this document and others like it fall squarely within the scope of the Expedited Discovery Order.

27. A sampling of other e-mails Defendants did not include in their April 3 Production reflects the same failure to comply with the Expedited Discovery Order. For example, Defendants did not produce the following:

    a. A January 2018 e-mail between Aedo and a third-party in which Aedo, among other things, (i) referred to an April 23, 2018 trade fair as Titan's "official [l]aunch;" (ii) indicated that Titan had obtained a building to be used as a plant and that "we are moving equipment in this week;" and

(iii) stated "[w]e believe by next week we will have products to show and also by the end of next week perhaps a sample of our logo." (Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. D, at 45.)

b. A January 24, 2018 e-mail from Aedo to a third-party bearing the subject line "Titan!!!" in which Aedo suggested that the recipient "should travel to Gastonia, visit the RV [i.e., Red Valve] plant, and while you are there we can get together to plan or at least so you can get to know my company and see how we are moving forward[.]" (Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. D, at 67.)

c. A pre-incorporation e-mail exchange between Aedo and a third-party discussing potential logo designs for Titan. (Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. D, at 93.)

d. A February 1, 2018 e-mail from Aedo to a potential Titan customer in which Aedo described Titan's plans to "start building" duck bill valves, which Red Valve currently manufactures under the "Tideflex" brand name. (Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. G, at 269.) In the e-mail, Aedo stated as follows:

> Currently there's about 20 companies building Duck bill valves and none are good or a thread [sic] to tideflex on quality, Titan can be the only one today that can build same or better quality and lower price significantly. Once you visit we will take a tour in Tideflex as well so you can see how this product is manufactured which I believe is beautiful[.]

(Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. G, at 269.)

Each of these e-mails reflects efforts taken to create Titan prior to March 14, 2018 and were required to be produced under the Expedited Discovery Order.

28. Even if the Court were to adopt Defendants' unreasonably narrow interpretation of paragraph 9(b)(iv), Defendants' April 3 Production is still deficient. For example, Defendants failed to produce an e-mail exchange between the individual Defendants and a third-party CPA bearing the subject line "EIN & S-Corp Election," which attached a letter from the IRS assigning Titan an Employer Identification Number and a Form 2553. (Pls.' Suppl. Br. Supp. Mot. Sanctions Ex. A, at 2–8.) Indeed, based on the representations of Plaintiffs' counsel at the December 18 Hearing, it appears that Defendants have not even produced Titan's Articles of Incorporation through either expedited discovery or regular discovery, a document which would certainly appear to be responsive even under Defendants' constrained reading of paragraph 9(b)(iv).

29. As discussed more fully below, that Defendants contend such documents are unresponsive, or only "arguably responsive," to an order compelling production of "all documents describing all efforts undergone to create Titan Valve" raises serious concerns that Defendants' determinations of responsiveness under the Expedited Discovery Order and in response to Plaintiffs' written discovery requests during regular discovery are unreasonably limited and unreliable.

30. Based on the evidence of record, the Court concludes that Defendants' April 3 Production was substantially incomplete in violation of the Expedited Discovery Order. Defendants did not seek to supplement that production, and the Post-Filing

Withheld Documents were not produced until just days before fact discovery was set to expire.

31. Rule 37(b) of the North Carolina Rules of Civil Procedure permits a court to order a variety of sanctions against a party who fails to obey a court order regarding discovery. *See F.E. Davis Plumbing Co. v. Ingleside W. Assocs.*, 37 N.C. App. 149, 152, 245 S.E.2d 555, 557 (1978). These sanctions include, but are not limited to, the establishment of facts, the exclusion of evidence, the striking out of pleadings or parts thereof, or the dismissal of an action. N.C. R. Civ. P. 37(b)(2).

32. "The imposition of sanctions under Rule 37 'is in the sound discretion of the trial judge and cannot be overturned absent a showing of abuse of that discretion.'" *In re Pedestrian Walkway Failure*, 173 N.C. App. 237, 246, 618 S.E.2d 819, 826 (2005) (quoting *Bumgarner v. Reneau*, 332 N.C. 624, 631, 422 S.E.2d 686, 690 (1992)). A trial court will only be held to have abused its discretion "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *E. Brooks Wilkins Family Med., P.A. v. WakeMed*, 244 N.C. App. 567, 578, 784 S.E.2d 178, 185 (2016).

33. "North Carolina courts do not presently require the party requesting sanctions to demonstrate, as a part of its burden, that it suffered prejudice as a result of the opposing party's discovery failures or that the opposing party acted willfully." *Tumlin v. Tuggle Duggins P.A.*, 2018 NCBC LEXIS 225, at *31 (N.C. Super. Ct. May 22, 2018); *see Henderson v. Wachovia Bank of N.C., N.A.*, 145 N.C. App. 621, 629, 551 S.E.2d 464, 470 (2001) ("[T]he plain language of Rule 37 does not require a showing

of willfulness."); *Out of the Box Developers, LLC v. LogicBit Corp.*, 2014 NCBC LEXIS 7, at *8 (N.C. Super. Ct. Mar. 20, 2014) ("[T]he party seeking Rule 37 sanctions need not show prejudice resulting from the sanctionable conduct."). "Willfulness, bad faith, or prejudice to another party do, however, influence *this* court's discretion in determining the appropriate sanction." *Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at *8.

34. The Court concludes, in the exercise of its discretion, that Defendants' failure to comply with the Expedited Discovery Order through their unreasonably narrow interpretation of the Order was not substantially justified, prejudiced Plaintiffs by causing unnecessary delay in the discovery and prosecution of their claims, and warrants the imposition of sanctions.

35. The Court next considers appropriate sanctions for Defendants' discovery misconduct.

A. Forensic Discovery of Defendants' Devices

36. Plaintiffs seek as a sanction an order permitting the forensic examination of all data sources and devices in Defendants' possession or control since July 2017. Plaintiffs contend that such an examination is warranted based on Defendants' conduct in discovery and potential spoliation of evidence. According to Plaintiffs, the Court cannot know the full extent of Defendants' discovery abuses until a forensic analysis is complete. Defendants respond that device discovery is inappropriate because, even if all documents responsive to the Expedited Discovery Order were not included in the April 3 Production, such documents were produced in regular

discovery, and the Return Protocol process included a review of information on numerous devices that Plaintiffs now seek to have forensically examined. After careful consideration, the Court concludes, in the exercise of its discretion, that a forensic examination should be ordered as described below.

37. "In addition to those sanctions specified by Rule 37(b)(2), the rule authorizes the court, upon failure to comply with a discovery order, to 'make such orders with regard to the failure as are just.'" *Leary v. Nantahala Power & Light Co.*, 76 N.C. App. 165, 170, 332 S.E.2d 703, 707 (1985) (quoting N.C. R. Civ. P. 37(b)(2)). When considering a forensic examination of a party's data sources and devices, the requesting party need not "specifically identify the exact documents he contends are missing," but must "at least provide some circumstantial evidence to suggest that potentially relevant information is missing in order to justify the burden of a forensic examination." *Tumlin*, 2018 NCBC LEXIS 225, at *40 (citing *Arndt v. First Union Nat'l Bank*, 170 N.C. App. 518, 527–28, 613 S.E.2d 274, 281 (2005)).

38. "In 'cases where trade secrets and electronic evidence are both involved, the [c]ourts have granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation.'" *Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams*, No. C10-05297 RMW (HRL), 2013 U.S. Dist. LEXIS 148360, at *5 (N.D. Cal. Oct. 15, 2013) (quoting *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 U.S. Dist. LEXIS 29265, at *7–8 (D. Kan. Mar. 24, 2006)).[9]

---

[9] Because "[t]he North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules," our courts have recognized that "[d]ecisions under the federal

39. "Apart from compelling production and inspection of computer hard drives and forensic imaging where trade secrets and electronic evidence are involved, courts have also compelled production based upon discrepancies or inconsistencies in a response to a discovery request or the responding party's unwillingness or failure to produce relevant information." *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, No. 07-2319-CM, 2009 U.S. Dist. LEXIS 22068, at *22–24 n.17 (D. Kan. Mar. 18, 2009); *see Koosharem Corp. v. Spec Personnel, LLC*, Civ. A. No. 6:08-583-HFF-WMC, 2008 U.S. Dist. LEXIS 108396, at *2–12 (D.S.C. Sept. 29, 2008) (allowing forensic analysis of defendants' computers based upon failure to produce documents and due to the relevance of ESI on the computers); *Orrell v. Motorcarparts of Am., Inc.*, No. Civ. 3:06CV418-R, 2007 U.S. Dist. LEXIS 89524, at *4, 7, 26 (W.D.N.C. Dec. 5, 2007) (permitting employer defendant to conduct forensic examination of plaintiff's home computer where plaintiff wiped hard drive of work-issued laptop and testified she forwarded e-mail to home computer).

40. However, "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (citing *McCurdy Grp., LLC v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001)).

---

rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989); *see, e.g.*, *Tumlin*, 2018 NCBC LEXIS 225, at *29 ("To the extent such law does not conflict with binding North Carolina precedent, the Court finds the guidance provided in the Sedona Conference Principles, Rule 37(e) of the Federal Rules of Civil Procedure, and federal case law on [Rule 37(b)(2) sanctions] persuasive to guide its analysis.").

41. The Court concludes here, in the exercise of its discretion, for good cause shown, and after considering lesser sanctions, that forensic discovery of Defendants' data sources and devices is warranted based on Defendants' discovery misconduct. The information Defendants took from Plaintiffs as they prepared to launch Titan, and the personal electronic devices and other data sources that Defendants used to take, store, transfer, or delete Plaintiffs' allegedly confidential and proprietary information, lie at the heart of this litigation. Plaintiffs have alleged, and presented substantial evidence tending to show, both that Defendants used these devices to access, use, and transfer Red Valve's confidential and proprietary information and that Defendants failed to return responsive documents relating to core issues in this case pursuant to the Expedited Discovery Order.

42. In particular, in addition to withholding documents responsive to the Expedited Discovery Order as discussed above, documents produced in November 2018—after Plaintiffs' Motion for Sanctions was filed—strongly suggest that Defendants concealed and improperly redacted adverse evidence in their April 3 Production. For instance, a screenshot of the following January 27, 2018 text message exchange among the individual Defendants was included within the April 3 Production:

Farris (date unclear): Got it

Aedo (1/27/18): [sent video image]

Aedo (1/27/18): Today I worked with the animator on our valve but he needs the car drawings

Aedo (1/27/18): Look at the video he did for me

(Pls.' Reply Br. Supp. Mot. Sanctions 2, ECF No. 115.)

43. Although the screenshot image appears to show four complete text messages, documents Defendants produced on November 16, 2018 strongly suggest that the screenshot was manipulated to omit critical information. Specifically, the final text message from Aedo provided, in its entirety, "Look at the video he did for me *based on a rv drawing*." (Pls.' Suppl. Br. Supp. Mot. Sanctions Ex. A, at 29 (emphasis added).) The omitted portion of this message—"based on a rv [i.e., Red Valve] drawing"—is highly relevant to Plaintiffs' claims and completely changes the factual context of the document as produced. Yet Defendants did not produce the full message in their April 3 Production, instead orienting the screenshot to omit this critical phrase from the April 3 Production and delaying full production of the exchange for over seven months until after Plaintiffs moved for sanctions. Defendants' claim of coincidence or inadvertence is unpersuasive, particularly when considering that Defendants included the first message in the series—"Got it"—which has no evident relevance to the subsequent exchange or any issue in this case.

44. Similarly, in response to the Expedited Discovery Order, Defendants produced a screenshot of the following February 16, 2018 text message exchange between Payne and Farris:

Farris (1/31/18): Just pulled into house

Payne (1/31/18): K. I got rubber parts for prototypes. How they coming?

Farris (1/31/18): Fifty percent still need to do plates

Farris (1/31/18): Thursday afternoon Friday morning

Payne (1/31/18): K. U get him tax id info?

Payne (2/16/18): Are prototypes done? Our tax id get here yet? Can I get a key to building?

(Pls.' Reply Br. Supp. Mot. Sanctions 9.)

45. As with the screenshot of the January 27, 2018 exchange, this screenshot was oriented to omit critical information. Post-Filing Withheld Documents show that the final message in the series actually stated, in its entirety: "Any prototypes done? Our tax id get here yet? Can I get a key to building? *Any building stations done?*" (Pls.' Suppl. Br. Supp. Mot. Sanctions Ex. A, at 42 (emphasis added).) The omitted portion, which suggests Defendants were then engaged in creating building stations in their effort to launch Titan, is again highly relevant to Plaintiffs' claims and plainly responsive to paragraph 9(b)(iv) of the Expedited Discovery Order. As before, the first message included in the series for production—"[j]ust pulled into house"—does not add context and is irrelevant.

46. In addition, Plaintiffs have offered evidence tending to show Defendants have spoliated evidence. Specifically, the evidence shows that (i) Aedo admitted to attempting to delete files from the Dropbox account on the day of his termination, (Williams Aff. ¶ 5, ECF No. 28); (ii) the night of his termination, Aedo remotely wiped his Red Valve iPhone and data and thus deleted "any text messages, chats (including iMessages), calendar entries, call records, Apple Notes, Internet history, voicemails, and any other use data generated on the device from March 2017 through [his] termination" in March 2018, (Walton Aff. ¶ 18, ECF 32; *see* Williams Aff. ¶ 5); and

(iii) Payne's Red Valve cell phone is "inaccessible," and its contents have not been produced, (Defs.' Resp. Opp'n Pls.' Mot. Sanctions 21–22).

47. This conduct—Defendants' failure to produce documents in the April 3 Production, omission of critical information from documents included in the April 3 Production, and potential spoliation of evidence—makes plain, whether considered individually or in combination, that further forensic examination of Defendants' devices and data sources is necessary for the proper administration of justice in this case.

48. The need for a forensic examination is further highlighted by Red Valve's failure to locate and produce a number of USB devices that were connected to Payne's Red Valve computer during the relevant time period that potentially contain relevant information. In support of their P.I. Motion, Plaintiffs offered evidence that their expert's initial forensic examination of Payne's Red Valve computer revealed that "a large amount of USB device activity" took place between October 2017 and Payne's termination in March 2018. (Walton Aff. ¶ 7.) Plaintiffs' expert averred that thirteen USB devices were connected to Payne's Red Valve computer between October 2017 and March 2018. (Walton Aff. ¶ 7.) At that time, only two of the thirteen USB devices had been located during a search of Payne's office at Red Valve, leaving eleven unaccounted for. (Walton Aff. ¶ 7.) It was not until October 23, 2018 that Defendants advised Plaintiffs that they were in possession of two of the missing eleven USB devices.[10] Nine other USB devices identified by Plaintiffs' expert in April 2018 have

---

[10]  The day prior, October 22, 2018, Defendants advised Plaintiffs and the Court that they were in possession of an additional USB device that Plaintiffs' expert had not previously

not been produced or accounted for. (Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. M, Ritzi Aff. ¶¶ 6–8, ECF No. 92.)

49. Plaintiffs seek a forensic examination of all data sources and devices used by Defendants since July 2017. These sources and devices fall within two categories: (i) Defendants' data sources and devices that were subject to the Return Protocol process (the "Return Protocol Data Sources") and (ii) any other data sources or devices used by Defendants that were not subject to the Return Protocol (the "Other Data Sources").

50. The Return Protocol defined Data Sources as follows:

> all email accounts, cloud based storage accounts, computers, mobile devices, USB drives, and external hard drives in the possession of Defendants Payne, Aedo, and Titan, and the possession and control of Defendant Farris, which any Defendant believes (1) may contain or has ever contained any Red Valve Property, (2) has been connected to any Red Valve server or computer, or (3) has contained or does now contain any backup of any other Data Source.

(Pls.' Exs. Mem. Law Supp. Mot. Sanctions Ex. B, at 2 [hereinafter "Return Protocol"], ECF No. 92.) Under the Return Protocol, Envista Forensics, a consulting expert retained by Defendants, was to create a mirror image of the Return Protocol Data Sources and forensically preserve their contents in a format that preserves and secures intact the original data and all metadata. (Return Protocol 5.) However, Plaintiffs have not been provided certain metadata, including connected device

---

identified. Payne has acknowledged that this USB device was given to him in late June or early July 2018 by a current Red Valve employee and contained thousands of Red Valve build sheets (i.e., documents containing a comprehensive listing of the quantity and dimensions of materials used in the hand-fabrication of rubber sleeves and the detailed sequence in which each material is applied). (Payne Aff. ¶¶ 2–3, ECF No. 118; *see* Duer Aff. ¶ 17, ECF No. 28.) Payne's failure to timely produce this USB device is a subject of Plaintiffs' November 6, 2018 Motion for Order to Show Cause, which the Court will decide by separate order.

histories, "log in" or access histories, and other access and use data under the Return Protocol.

51. At the December 18 Hearing, Plaintiffs' counsel advised that Plaintiffs primarily seek a forensic examination to obtain information relating to the use and access of Defendants' devices rather than any substantive file information contained on those devices. Plaintiffs argue that "[f]orensic analysis of the devices [that the missing] USB drives may have been connected to is necessary to determine the full story regarding the transfer of any files located on the drives." (Pls.' Br. Supp. Mot. Sanctions 18, ECF No. 91.) In particular, Plaintiffs argue that a forensic examination of Defendants' data sources and devices will enable Plaintiffs to determine whether Defendants connected the missing USB devices to other electronic devices that Defendants used in launching Titan and, if so, whether files containing Red Valve's confidential and proprietary information were transferred or deleted.

52. The Court is persuaded, based on the evidence of record and in the exercise of its discretion, that a forensic examination is justified and appropriate in the circumstances of this case. As to Return Protocol Data Sources, the Court concludes that a forensic examination of the access and use data from those sources is justified and appropriate to determine which devices were connected to those sources, when they were connected, and whether files were transferred or deleted. As to Defendants' Other Data Sources, the Court concludes that Defendants should produce, for a similar forensic examination of access and use data, mirror images of all Other Data Sources used by Defendants since July 2017. Such sources shall include not only

physical electronic data sources (i.e., computers, mobile devices, USB drives, and external hard drives), but also cloud-based accounts and systems used to access and store information. The parties shall be ordered to meet and confer to consider an appropriate device discovery protocol to promptly complete the forensic examination ordered hereunder.

B.  Plaintiffs' Reasonable Expenses

53.  Plaintiffs also seek as a sanction that Defendants be required to pay Plaintiffs' reasonable expenses incurred in bringing the Motion for Sanctions, including payment of Plaintiffs' reasonable attorneys' fees.

54.  In lieu of or in addition to other sanctions permitted under Rule 37, "the court shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." N.C. R. Civ. P. 37(b)(2). Thus, "when a party compelled to provide discovery [fails] to do so, an award of reasonable costs is *mandatory* unless the failure is substantially justified or an award would be unjust due to other circumstances." *Bradshaw v. Maiden*, 2018 NCBC LEXIS 46, at *21–22 (N.C. Super. Ct. May 9, 2018) (internal quotation marks omitted). Because awarded expenses are required to be "reasonable, the record must contain findings of fact to support the award of any expenses, including attorney's fees." *Benfield v. Benfield*, 89 N.C. App. 415, 422, 366 S.E.2d 500, 504 (1988).

55. As discussed above, Defendants failed to comply with the Expedited Discovery Order by withholding responsive documents and concealing material, adverse evidence. Defendants do not contend that their violative conduct resulted from insufficient time to comply with the Expedited Discovery Order or that responsive documents were not available in time for the April 3 Production. To the contrary, Defendants contend that their production was proper and fully consistent with the Expedited Discovery Order, a position the Court has found wholly without merit. The Court therefore concludes, in the exercise of its discretion and based on the evidence of record, that Defendants' failure to comply with the Expedited Discovery Order was not "substantially justified," nor do the facts and circumstances of this case "make an award of expenses unjust." N.C. R. Civ. P. 37(b)(2).

56. Accordingly, the Court concludes, in the exercise of its discretion and under the Court's authority pursuant to Rule 37, that the circumstances here warrant the entry of an order requiring Defendants to pay Plaintiffs' reasonable expenses, including Plaintiffs' reasonable attorneys' fees, incurred in (i) prosecuting the Motion for Sanctions and (ii) seeking and obtaining the Withheld Documents, including Plaintiffs' expenses incurred in identifying documents responsive to the Expedited Discovery Order, sending deficiency letters, engaging in meet and confer discussions, and complying with the BCR 10.9 process. Plaintiffs may submit a petition to recover these expenses as provided in this Order.

C.    Strike Answer to New Claims

57.    As a further sanction, Plaintiffs ask the Court to preemptively strike Defendants' answer or other response to the newly asserted tortious interference claims contained in Plaintiffs' Amended Complaint and preclude Defendants from conducting discovery as to those claims.[11]   As justification, Plaintiffs argue that Defendants' misconduct has prejudiced "Plaintiffs' ability to meaningfully gain access to information in discovery that would have allowed them to prosecute their claims against Defendants." (Pls.' Br. Supp. Mot. Sanctions 20–21.)

58.    Rule 37(b) provides that appropriate sanctions may include, among other things, an "order refusing to allow the disobedient party to support or oppose designated claims or defenses" or "striking out pleadings or parts thereof." N.C. R. Civ. P. 37(b)(2)(b)–(c). "[S]triking a party's answer is a severe sanction which should only be imposed where the trial court has considered less severe sanctions and found them to be inappropriate." *Few v. Hammack Enters., Inc.*, 132 N.C. App. 291, 299, 511 S.E.2d 665, 671 (1999) (citing *Triad Mack Sales & Serv. v. Clement Bros. Co.*, 113 N.C. App. 405, 409, 438 S.E.2d 485, 488 (1994)). Moreover, "[i]mposition of sanctions that are directed to the outcome of the case, such as dismissals, default judgments, or preclusion orders, . . . are examined in the light of the general purpose of the Rules

---

[11]   Contemporaneous with their Motion for Sanctions, Plaintiffs filed a Motion to Amend Complaint, through which Plaintiffs sought to assert new claims for tortious interference with contract and tortious interference with economic advantage. (Pls.' Mot. Am. Compl., ECF No. 86.) With Defendants' consent, (Defs.' Resp. Br. Pls.' Mot. Am. Compl. 3, ECF No. 107), the Court granted Plaintiffs' Motion to Amend Complaint on December 14, 2018, (Order Pls.' Mot. Am. Compl., ECF No. 132), and Plaintiffs filed the Amended Complaint on December 19, 2018 (Am. Compl., ECF No. 136).

to encourage trial on the merits." *Moore v. Mills*, 190 N.C. App. 178, 180–81, 660 S.E.2d 589, 591 (2008) (quoting *Am. Imps., Inc. v. G. E. Emps. W. Region Fed. Credit Union*, 37 N.C. App. 121, 124, 245 S.E.2d 798, 800 (1978)).

59. While the Court agrees that Defendants' failure to timely comply with the Expedited Discovery Order delayed Plaintiffs' ability to timely discover and prosecute their tortious interference claims, Plaintiffs will have an opportunity to prosecute those claims consistent with the time deadlines set under the December 20, 2018 Amended Case Management Order. As such, and in light of the preference within the North Carolina Rules of Civil Procedure for adjudicating claims on the merits, the Court concludes, in the exercise of its discretion, that striking Defendants' answer or otherwise denying Defendants the opportunity to defend against Plaintiffs' tortious interference claims is inappropriate in light of the circumstances of this case and considering the sanctions otherwise provided herein.

III.

CONCLUSION

60. **WHEREFORE**, the Court, for the reasons stated herein and in the exercise of its discretion, hereby **GRANTS** the Motion for Sanctions, **GRANTS in part** and **DENIES in part** Plaintiffs' requested sanctions, and **ORDERS** as follows:

    a. As to Plaintiffs' request for forensic discovery of Defendants' devices and data sources:

        i. Plaintiffs shall be permitted to conduct a forensic examination of all data sources used by Defendants after July 2017,

including computers, mobile devices, USB drives, external hard drives, e-mail accounts, and cloud-based storage accounts—regardless of whether such data sources were subject to the Return Protocol—for data and metadata related to Defendants' access and use of such data sources. Plaintiffs shall not, however, be permitted to review substantive file information contained on these data sources at this time.

ii. Within fourteen (14) days of the date of this Order, the parties shall meet, confer, and file a proposed device discovery protocol to implement the forensic examination ordered hereunder.

iii. The forensic examination shall be conducted by Plaintiffs' forensic expert, Reliance Forensics.

iv. Plaintiffs shall bear the cost of the forensic examination ordered hereunder, subject to later modification in the Court's discretion.[12]

b. As to Plaintiffs' request for payment of its reasonable expenses, including attorneys' fees:

i. Defendants shall pay Plaintiffs their reasonable expenses, including attorneys' fees, incurred in obtaining this Order. Such fees and expenses shall be limited to those incurred in (i)

---

[12] Plaintiffs' counsel indicated at the December 18 Hearing that Plaintiffs would agree to pay for the forensic examination Plaintiffs sought through the Motion. The Court thus orders Plaintiffs to initially bear this cost, although the Court will consider shifting the costs of this examination at a later date for good cause shown.

prosecuting the Motion for Sanctions and (ii) seeking and obtaining the Withheld Documents, including expenses incurred in identifying documents responsive to the Expedited Discovery Order, sending deficiency letters, engaging in meet and confer discussions, and complying with the BCR 10.9 process.

ii. Plaintiffs may file a petition for payment of their reasonable expenses, including attorneys' fees, with supporting affidavits and any other supporting material, no later than January 25, 2019. Defendants may file a response, with supporting materials, if any, no later than February 8, 2019. The Court will determine at a later date whether it will hold a hearing on any such petition.

c. As to Plaintiffs' request for an order preemptively striking Defendants' answer to Plaintiffs' newly asserted tortious interference claims, Plaintiffs' request is denied, and Defendants shall file their answer or other responsive pleading in accordance with the requirements of the North Carolina Rules of Civil Procedure and the Business Court Rules.

**SO ORDERED**, this the 11th day of January, 2019.[13]

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

---

[13] This Order and Opinion was originally filed under seal on January 11, 2019. This public version of the Order and Opinion is being filed on January 16, 2019. Because this public version of the Order and Opinion does not contain any substantive changes from the version filed under seal as to constitute an amendment, and to avoid confusion in the event of an appeal, the Court has elected to state the filing date of the public version of the Order and Opinion as January 11, 2019.